# KELLY, CONNECTICUT CHIEF STATE'S ATTORNEY, ET AL. *v.* ROBINSON

No. 85–1033.   Argued October 8, 1986—Decided November 12, 1986

POWELL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, BLACKMUN, O'CONNOR, and SCALIA, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 53.

*Carl Schuman*, Assistant States' Attorney of Connecticut, argued the cause and filed briefs for petitioners.

*Francis X. Dineen* argued the cause and filed a brief for respondent.*

JUSTICE POWELL delivered the opinion of the Court.

We granted review in this case to decide whether restitution obligations, imposed as conditions of probation in state criminal proceedings, are dischargeable in proceedings under Chapter 7 of the Bankruptcy Code.

I

In 1980, Carolyn Robinson pleaded guilty to larceny in the second degree. The charge was based on her wrongful receipt of $9,932.95 in welfare benefits from the Connecticut Department of Income Maintenance. On November 14, 1980, the Connecticut Superior Court sentenced Robinson to a prison term of not less than one year nor more than three years. The court suspended execution of the sentence and

*Briefs of *amici curiae* urging reversal were filed for the State of Alabama et al. by *Susan Crump* and *David Crump*, and by the Attorneys General for their respective States as follows: *Charles K. Graddick* of Alabama, *Harold M. Brown* of Alaska, *Robert K. Corbin* of Arizona, *John K. Van de Kamp* of California, *Duane Woodard* of Colorado, *Charles M. Oberly III* of Delaware, *Jim Smith* of Florida, *Corinne K. A. Watanabe* of Hawaii, *James T. Jones* of Idaho, *Neil F. Hartigan* of Illinois, *Linley E. Pearson* of Indiana, *Thomas J. Miller* of Iowa, *Robert T. Stephan* of Kansas, *Steven L. Beshear* of Kentucky, *William J. Guste, Jr.*, of Louisiana, *Stephen Sachs* of Maryland, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *William L. Webster* of Missouri, *Michael T. Greely* of Montana, *Brian McKay* of Nevada, *Stephen E. Merrill* of New Hampshire, *Irwin I. Kimmelman* of New Jersey, *Paul Bardacke* of New Mexico, *Lacy H. Thornburg* of North Carolina, *Nicholas J. Spaeth* of North Dakota, *Michael C. Turpen* of Oklahoma, *David B. Frohnmayer* of Oregon, *LeRoy S. Zimmerman* of Pennsylvania, *Arlene Violet* of Rhode Island, *T. Travis Medlock* of South Carolina, *W. J. Michael Cody* of Tennessee, *David L. Wilkinson* of Utah, *John J. Easton* of Vermont, *Mary Sue Terry* of Virginia, *Kenneth O. Eikenberry* of Washington, *Bronson C. La Follette* of Wisconsin, and *A. G. McClintock* of Wyoming; and for the National Governors' Association et al. by *Benna Ruth Solomon, Beate Bloch, Philip A. Lacovara,* and *Susan L. Thorner.*

placed Robinson on probation for five years. As a condition of probation, the judge ordered Robinson to make restitution[1] to the State of Connecticut Office of Adult Probation (Probation Office) at the rate of $100 per month, commencing January 16, 1981, and continuing until the end of her probation.[2]

On February 5, 1981, Robinson filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U. S. C. § 701 *et seq.*, in the United States Bankruptcy Court for the District of Connecticut. That petition listed the restitution obligation as a debt. On February 20, 1981, the Bankruptcy Court notified both of the Connecticut agencies of Robinson's petition and informed them that April 27, 1981, was the deadline for filing objections to discharge. The agencies did not file proofs of claim or objections to discharge, apparently because they took the position that the bankruptcy would not affect the conditions of Robinson's probation. Thus, the agencies did not participate in the distribution of Robinson's estate. On May 14, 1981, the Bankruptcy Court granted Robinson a discharge. See § 727.

At the time Robinson received her discharge in bankruptcy, she had paid $450 in restitution. On May 20, 1981, her attorney wrote the Probation Office that she believed the discharge had altered the conditions of Robinson's probation, voiding the condition that she pay restitution. Robinson made no further payments.

The Connecticut Probation Office did not respond to this letter until February 1984, when it informed Robinson that it

---

[1] Connecticut Gen. Stat. § 53a–30 (1985) sets out the conditions a trial court may impose on a sentence of probation. Clause 4 of that section authorizes a condition that the defendant "make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance."

[2] There is some uncertainty about the total amount Robinson was ordered to pay. Although the judge imposed restitution in a total amount of $9,932.95, five years of payments at $100 a month total only $6,000.

considered the obligation to pay restitution nondischargeable. Robinson responded by filing an adversary proceeding in the Bankruptcy Court, seeking a declaration that the restitution obligation had been discharged, as well as an injunction to prevent the State's officials from forcing Robinson to pay.

After a trial, the Bankruptcy Court entered a memorandum and proposed order, concluding that the 1981 discharge in bankruptcy had not altered the conditions of Robinson's probation. *Robinson* v. *McGuigan*, 45 B. R. 423 (1984). The court adopted the analysis it had applied in a similar case decided one month earlier, *In re Pellegrino (Pellegrino* v. *Division of Criminal Justice)*, 42 B. R. 129 (1984). In *Pellegrino*, the court began with the Bankruptcy Code's definitional sections. First, § 101(11) defines a "debt" as a "liability on a claim." In turn, § 101(4) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Finally, § 101(9) defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

The *Pellegrino* court then examined the statute under which the Connecticut judge had sentenced the debtor to pay restitution. Restitution appears as one of the conditions of probation enumerated in Conn. Gen. Stat. § 53a–30 (1985). Under that section, restitution payments are sent to the Probation Office. The payments then are forwarded to the victim. Although the Connecticut penal code does not provide for enforcement of the probation conditions by the victim, it does authorize the trial court to issue a warrant for the arrest of a criminal defendant who has violated a condition of probation. § 53a–32.

Because the Connecticut statute does not allow the victim to enforce a right to receive payment, the court concluded

that neither the victim nor the Probation Office had a "right to payment," and hence neither was owed a "debt" under the Bankruptcy Code. It argued: "Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose." 42 B. R., at 133. The court acknowledged the tension between its conclusion and the Code's expansive definition of debt, but found an exception to the statutory definition in "the long-standing tradition of restraint by federal courts from interference with traditional functions of state governments." *Id.*, at 134. The court concluded that, even if the probation condition was a debt subject to bankruptcy jurisdiction, it was nondischargeable under § 523(a)(7) of the Code. That subsection provides that a discharge in bankruptcy does not affect any debt that "is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss."

The court also concluded that the purpose of the restitution condition was "to promote the rehabilitation of the offender, not to compensate the victim." 42 B. R., at 137. It specifically rejected the argument that the restitution must be deemed compensatory because the amount precisely matched the victim's loss. It noted that the state statute allows an offender to "make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby," Conn. Gen. Stat. § 53a–30(a)(4) (1985). In its view, the Connecticut statute focuses "upon the offender and not on the victim, and . . . restitution is part of the criminal penalty rather than compensation for a victim's actual loss." 42 B. R., at 137. Thus, the Bankruptcy Court held that the bankruptcy discharge had not affected the conditions of Pellegrino's probation. The United States District Court for

the District of Connecticut adopted the Bankruptcy Court's proposed dispositions of *Pellegrino* and this case without alteration.

The Court of Appeals for the Second Circuit reversed. *In re Robinson*, 776 F. 2d 30 (1985). It first examined the Code's definition of debt. Although it recognized that most courts had reached the opposite conclusion, the court decided that a restitution obligation imposed as a condition of probation is a debt. It relied on the legislative history of the Code that evinced Congress' intent to broaden the definition of "debt" from the much narrower definition of the Bankruptcy Act of 1898. The court also noted that anomalies might result from a conclusion that such an obligation is not a debt. Most importantly, nondebt status would deprive a State of the opportunity to participate in the distribution of the debtor's estate.

Having concluded that restitution obligations are debts, the court turned to the question of dischargeability. The court stated that the appropriate Connecticut agency probably could have avoided discharge of the debt if it had objected under §§ 523(a)(2) or 523(a)(4) of the Code.[3] As no objections to discharge were filed, the court concluded that the State could rely only on § 523(a)(7), the subsection that provides for automatic nondischargeability for certain debts.[4]

---

[3] Section 523(a)(2)(A) protects from discharge debts "for obtaining money, property, services, or an extension, renewal, or refinance of credit, by . . . false pretenses, a false representation, or actual fraud." Section 523(a)(4) protects from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Under § 523(c), debts that are protected from discharge only by § 523(a)(2) or § 523(a)(4) are discharged unless the creditor files an objection to discharge during the bankruptcy proceedings. Because Robinson was convicted of larceny, one of the debts listed in § 523(a)(4), it is quite likely that the Bankruptcy Court, if it had found the obligation to be a "debt," would have found it nondischargeable under that subsection.

[4] The requirement that creditors object to discharge is limited on its face to ¶¶ (2), (4), and (6) of § 523(a). Because ¶ 7 is not listed there, debts

The court then looked to the text of the Connecticut statute to determine whether Robinson's probation condition was "compensation for actual pecuniary loss" within the meaning of § 523(a)(7). But where the Bankruptcy Court had considered the entire state probation system, the Court of Appeals focused only on the language that allows a restitution order to be assessed "for the loss or damage caused [by the crime]," Conn. Gen. Stat. § 53a–30(a)(4) (1985). The court thought this language compelled the conclusion that the probation condition was "compensation for actual pecuniary loss." It held, therefore, that this particular condition of Robinson's probation was not protected from discharge by § 523(a)(7). Accordingly, it reversed the District Court.

We granted the State's petition for a writ of certiorari. 475 U. S. 1009 (1986). We have jurisdiction to review the judgment of the Court of Appeals under 28 U. S. C. § 1254(1). We reverse.

## II

The Court of Appeals' decision focused primarily on the language of §§ 101 and 523 of the Code. Of course, the "starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps* v. *Manor Drug Stores,* 421 U. S. 723, 756 (1975) (POWELL, J., concurring). But the text is only the starting point. As JUSTICE O'CONNOR explained last Term: "'"In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."'" *Offshore Logistics, Inc.* v. *Tallentire,* 477 U. S. 207, 221 (1986) (quoting *Mastro Plastics Corp.* v. *NLRB,* 350 U. S. 270, 285 (1956) (in turn quoting *United States* v. *Heirs of Boisdoré,* 8 How. 113, 122 (1849))). In this case, we must consider the language of §§ 101 and 523

described in that paragraph are automatically nondischargeable, under the general rule prescribed in the opening clause of § 523(a) (providing that a "discharge under section 727 . . . of this title does not discharge an individual debtor from any debt" listed in the paragraphs that follow).

in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.

## A

Courts traditionally have been reluctant to interpret federal bankruptcy statutes to remit state criminal judgments. The present text of Title 11, commonly referred to as the Bankruptcy Code, was enacted in 1978 to replace the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544.[5] The treatment of criminal judgments under the Act of 1898 informs our understanding of the language of the Code.

First, § 57 of the Act established the category of "allowable" debts. See 3 Collier on Bankruptcy ¶ 57 (14th ed. 1977). Only if a debt was allowable could the creditor receive a share of the bankrupt's assets. See § 65a. For this case, it is important to note that § 57j excluded from the class of allowable debts penalties owed to government entities. That section provided:

> "Debts owing to the United States, a State, a county, a district, or a municipality as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose." 30 Stat. 561.

Second, § 63 established the separate category of "provable" debts. See 3A Collier on Bankruptcy ¶ 63 (14th ed. 1975). Section 17 provided that a discharge in bankruptcy "release[d] a bankrupt from all of his provable debts," subject to several exceptions listed in later portions of § 17. Although § 17 specifically excepted four types of debts from discharge, it did not mention criminal penalties of any kind. The most natural construction of the Act, therefore, would

---

[5] Congress amended the Bankruptcy Act several times between 1898 and 1978. Congress also made numerous technical changes to the Code in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98–353, 98 Stat. 380. None of those changes are relevant to this decision.

have allowed criminal penalties to be discharged in bank-
ruptcy, even though the government was not entitled to a
share of the bankrupt's estate. Congress had considered
criminal penalties when it passed the Act; it clearly made
them nonallowable. The failure expressly to make them
nondischargeable at the same time offered substantial sup-
port for the view that the Act discharged those penalties.

But the courts did not interpret the Act in this way.
Despite the clear statutory language, most courts refused
to allow a discharge in bankruptcy to affect the judgment
of a state criminal court. In the leading case, the court
reasoned:

> "It might be admitted that sections 63 and 17 of the
> bankrupt act, if only the letter of those provisions be
> looked to, would embrace [criminal penalties]; but it is
> well settled that there may be cases in which such literal
> construction is not admissible. . . . It may suffice to say
> that nothing but a ruling from a higher court would con-
> vince me that congress, by any provision of the bankrupt
> act, intended to permit the discharge, under its opera-
> tions, of any judgment rendered by a state or federal
> court imposing a fine in the enforcement of criminal
> laws. . . . The provisions of the bankrupt act have refer-
> ence alone to civil liabilities, as demands between debtor
> and creditors, as such, and not to punishment inflicted
> pro bono publico for crimes committed." *In re Moore*,
> 111 F. 145, 148–149 (WD Ky. 1901).[6]

---

[6] Although courts differed as to the boundaries of the exception, particu-
larly in cases involving nonmonetary sanctions, or sanctions imposed in
civil proceedings, the reasoning of *Moore* was widely accepted. See, *e. g.*,
*Parker* v. *United States*, 153 F. 2d 66, 71 (CA1 1946) (citing *Moore* and
noting that "[i]t was not in the contemplation of Congress that the federal
bankruptcy power should be employed to pardon a bankrupt from the con-
sequences of a criminal offense"); *Zwick* v. *Freeman*, 373 F. 2d 110, 116
(CA2 1967) (citing *Moore* and stating that "governmental sanctions are not
regarded as debts even when they require monetary payments"). We
have found only one federal-court decision allowing a discharge under the

This reasoning was so widely accepted by the time Congress enacted the new Code that a leading commentator could state flatly that "fines and penalties are not affected by a discharge." See 1A Collier on Bankruptcy ¶ 17.13, pp. 1609–1610, and n. 10 (14th ed. 1978).

Moreover, those few courts faced with restitution obligations imposed as part of criminal sentences applied the same reasoning to prevent a discharge in bankruptcy from affecting such a condition of a criminal sentence. For instance, four years before Congress enacted the Code, a New York Supreme Court stated:

> "A discharge in bankruptcy has no effect whatsoever upon a condition of restitution of a criminal sentence. A bankruptcy proceeding is civil in nature and is intended to relieve an honest and unfortunate debtor of his debts and to permit him to begin his financial life anew. A condition of restitution in a sentence of probation is a part of the judgment of conviction. It does not create a debt nor a debtor-creditor relationship between the persons making and receiving restitution. As with any other condition of a probationary sentence it is intended as a means to insure the defendant will lead a law-abiding life thereafter." *State* v. *Mosesson,* 78 Misc. 2d 217, 218, 356 N. Y. S. 2d 483, 484 (1974) (citations omitted).[7]

Thus, Congress enacted the Code in 1978 against the background of an established judicial exception to discharge for criminal sentences, including restitution orders, an exception created in the face of a statute drafted with considerable care and specificity.

---

Act to affect a sentence imposed by a criminal court. *In re Alderson,* 98 F. 588 (W. Va. 1899).

[7] For other decisions adopting this reasoning, see *People* v. *Topping Bros.,* 79 Misc. 2d 260, 262, 359 N. Y. S. 2d 985, 987–988 (Crim. Ct. 1974); *People* v. *Washburn,* 97 Cal. App. 3d 621, 625–626, 158 Cal. Rptr. 822, 825 (1979).

Just last Term we declined to hold that the new Bankruptcy Code silently abrogated another exception created by courts construing the old Act. In *Midlantic National Bank v. New Jersey Dept. of Environmental Protection,* 474 U. S. 494 (1986), a trustee in bankruptcy asked us to hold that the 1978 Code had implicitly repealed an exception to the trustee's abandonment power. Courts had created that exception out of deference to state health and safety regulations, a consideration comparable to the States' interests implicated by this case. We stated:

> "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications. If Congress wishes to grant the trustee an extraordinary exemption from nonbankruptcy law, 'the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt.'" *Id.,* at 501 (quoting *Swarts* v. *Hammer,* 194 U. S. 441, 444 (1904)) (citations omitted).

### B

Our interpretation of the Code also must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions." *Younger* v. *Harris,* 401 U. S. 37, 46 (1971). The Court of Appeals nevertheless found support for its holding in the fact that Connecticut officials probably could have ensured continued enforcement of their court's criminal judgment against Robinson had they ob-

jected to discharge under § 523(c). Although this may be true in many cases, it hardly justifies an interpretation of the 1978 Act that is contrary to the long-prevailing view that "fines and penalties are not affected by a discharge," 1A Collier on Bankruptcy ¶ 17.13, p. 1610 (14th ed. 1978).

Moreover, reliance on a right to appear and object to discharge would create uncertainties and impose undue burdens on state officials. In some cases it would require state prosecutors to defend particular state criminal judgments before federal bankruptcy courts.[8] As JUSTICE BRENNAN has noted, federal adjudication of matters already at issue in state criminal proceedings can be "an unwarranted and unseemly duplication of the State's own adjudicative process." *Perez* v. *Ledesma,* 401 U. S. 82, 121 (1971) (opinion concurring in part and dissenting in part).[9]

Also, as Robinson's attorney conceded at oral argument, some restitution orders would not be protected from discharge even if the State did appear and enter an objection to discharge. For example, a judge in a negligent homicide case might sentence the defendant to probation, conditioned on the defendant's paying the victim's husband compensation for the loss the husband sustained when the defendant killed his wife. It is not clear that such a restitution order would

---

[8] In many cases, of course, principles of issue preclusion would obviate the need for the bankruptcy court to reexamine factual questions, or interpret state law. But differences between the elements of crimes and the provisions of § 523 frequently might hinder the application of issue preclusion. Moreover, apart from the burden on state officials of following and participating in bankruptcy proceedings, it is unseemly to require state prosecutors to submit the judgments of their criminal courts to federal bankruptcy courts.

[9] Of course, federal courts often duplicate state adjudicative processes when they consider petitions for the writ of habeas corpus. But explicit reference in the Constitution, Art. I, § 9, cl. 2, as well as several federal statutes, testifies to the importance of the writ of habeas corpus. Here, the case for relitigation in the federal courts rests only on the ambiguous words of the Bankruptcy Code.

fit the terms of any of the exceptions to discharge listed in § 523 other than § 523(a)(7). Thus, this interpretation of the Code would do more than force state prosecutors to defend state criminal judgments in federal bankruptcy court. In some cases, it could lead to federal remission of judgments imposed by state criminal judges.

This prospect, in turn, would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems.[10] We do not think Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges.

In one of our cases interpreting the Act, Justice Douglas remarked: "[W]e do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin* v. *England*, 385 U. S. 99, 103 (1966). This Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief. See *Younger* v. *Harris, supra,* at 44–45. This reflection of our federalism also must influence our interpretation of the Bankruptcy Code in this case.[11]

---

[10] Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine. See Note, Victim Restitution in the Criminal Process: A Procedural Analysis, 97 Harv. L. Rev. 931, 937–941 (1984).

[11] Justice Frankfurter advocated a similar approach to the interpretation of regulatory statutes that infringe upon important state interests:

"The task is one of accommodation as between assertions of new federal authority and historic functions of the individual states. Federal legisla-

## III

In light of the established state of the law—that bankruptcy courts could not discharge criminal judgments—we have serious doubts whether Congress intended to make criminal penalties "debts" within the meaning of § 101(4).[12] But we need not address that question in this case, because we hold that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence.

The relevant portion of § 523(a)(7) protects from discharge any debt

> "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss."

This language is subject to interpretation. On its face, § 523(a)(7) certainly does not compel the conclusion reached by the Court of Appeals, that a discharge in bankruptcy voids restitution orders imposed as conditions of probation by state courts. Nowhere in the House and Senate Reports is there any indication that this language should be read so intru-

---

tion of this character cannot therefore be construed without regard to the implications of our dual system of government. . . . The underlying assumptions of our dual form of government, and the consequent presuppositions of legislative draftsmanship which are expressive of our history and habits, cut across what might otherwise be the implied range of legislation. The history of congressional legislation . . . justif[ies] the generalization that, when the Federal Government takes over such local radiations in the vast network of our national economic enterprise and thereby radically readjusts the balance of state and national authority, those charged with the duty of legislating are reasonably explicit." Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 539–540 (1947).

[12] We recognize, as the Court of Appeals emphasized, that the Code's definition of "debt" is broadly drafted, and that the legislative history, as well as the Code's various priority and dischargeability provisions, supports a broad reading of the definition. But nothing in the legislative history of these sections compels the conclusion that Congress intended to change the state of the law with respect to criminal judgments.

sively.[18] If Congress had intended, by § 523(a)(7) or by any other provision, to discharge state criminal sentences, "we can be certain that there would have been hearings, testimony, and debate concerning consequences so wasteful, so inimical to purposes previously deemed important, and so likely to arouse public outrage," *TVA* v. *Hill*, 437 U. S. 153, 209 (1978) (POWELL, J., dissenting).

Our reading of § 523(a)(7) differs from that of the Second Circuit. On its face, it creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures. Congress included two qualifying phrases; the fines must be both "to and for the benefit of a governmental unit," and "not compensation for actual pecuniary loss." Section 523(a)(7) protects traditional criminal fines; it codifies the judicially created exception to discharge for fines. We must decide whether the result is altered by the two major differences between restitution and a traditional fine. Un-

---

[18] For the section-by-section analysis in the legislative Reports, see H. R. Rep. No. 95–595, p. 363 (1977); S. Rep. No. 95–989, p. 79 (1978). For explanations of the section by commentators, see 3 Collier on Bankruptcy ¶ 523.17 (15th ed. 1986); 1 W. Norton, Bankruptcy Law and Practice § 27.37 (1982). In fact, both of these commentators expressly state that the language does not have the intrusive effect sought by Robinson. See Collier ¶ 523.17, at 523–123, n. 4; Norton § 27.37, at 55, n. 2.

It seems likely that the limitation of § 523(a)(7) to fines assessed "for the benefit of a governmental unit" was intended to prevent application of that subsection to wholly private penalties such as punitive damages. See H. R. Doc. No. 93–137, pt. 2, pp. 116, 141 (1973). As for the reference to "compensation for actual pecuniary loss," the Senate Report indicates that the main purpose of this language was to prevent § 523(a)(7) from being applied to tax penalties. S. Rep. No. 95–989, *supra*, at 79.

We acknowledge that a few comments in the hearings and the Bankruptcy Laws Commission Report may suggest that the language bears the interpretation adopted by the Second Circuit. But none of those statements was made by a Member of Congress, nor were they included in the official Senate and House Reports. We decline to accord any significance to these statements. See *McCaughn* v. *Hershey Chocolate Co.*, 283 U. S. 488, 493–494 (1931); 2A N. Singer, Sutherland on Statutory Construction § 48.10, pp. 319 and 321, n. 11 (4th ed. 1984).

like traditional fines, restitution is forwarded to the victim, and may be calculated by reference to the amount of harm the offender has caused.

In our view, neither of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution. The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant. As the Bankruptcy Judge who decided this case noted in *Pellegrino:* "Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose." 42 B. R., at 133.

This point is well illustrated by the Connecticut statute under which the restitution obligation was imposed. The statute authorizes a judge to impose any of eight specified conditions of probation, as well as "any other conditions reasonably related to his rehabilitation." Conn. Gen. Stat. § 53a–30(a)(9) (1985). Clause (4) of that section authorizes a judge to require that the defendant

> "make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance."

This clause does not require imposition of restitution in the amount of the harm caused. Instead, it provides for a flexible remedy tailored to the defendant's situation.

Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for . . . compensation" of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State.[14] Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

In light of the strong interests of the States, the uniform construction of the old Act over three-quarters of a century, and the absence of any significant evidence that Congress intended to change the law in this area, we believe this result best effectuates the will of Congress. Accordingly, the decision of the Court of Appeals for the Second Circuit is

*Reversed.*

JUSTICE MARSHALL, with whom JUSTICE STEVENS joins, dissenting.

Petitioners failed to assert timely objections to the discharge of respondent Robinson's restitution debt, and the

---

[14] This is not the only context in which courts have been forced to evaluate the treatment of restitution orders by determining whether they are "compensatory" or "penal." Several lower courts have addressed the constitutionality of the federal Victim and Witness Protection Act, 18 U. S. C. § 3579. Under that Act, defendants have no right to jury trial as to the amount of restitution, even though the Seventh Amendment would require such a trial if the issue were decided in a civil case. See Note, The Right to a Jury Trial to Determine Restitution Under the Victim and Witness Protection Act of 1982, 63 Texas L. Rev. 671 (1984). Every Federal Court of Appeals that has considered the question has concluded that criminal defendants contesting the assessment of restitution orders are not entitled to the protections of the Seventh Amendment. See *id.*, at 672, n. 18 (citing cases).

majority goes to considerable lengths to excuse this default. Respondent concedes that the restitution obligation would not have been discharged had petitioners objected in a timely fashion. Tr. of Oral Arg. 30.[1] When notified of respondent's bankruptcy proceeding, however, petitioners did nothing. They were told that they could file an objection to Robinson's discharge, but did not do so. Robinson's counsel informed the Connecticut Office of Adult Probation (Probation Office) of Robinson's discharge and of Robinson's belief that she need make no further payments, but the Probation Office did not respond. Not until almost three years after Robinson's discharge in bankruptcy did the Probation Office inform Robinson that it did not consider the debt discharged and that it intended to enforce the restitution order.

The Court charitably attributes petitioners' inaction to the fact that from the start petitioners took the position they assert here. *Ante,* at 39. But their representations at oral argument suggest only that they failed to object because "state agencies were admittedly somewhat confused on how to handle it," Tr. of Oral Arg. 9, and were "a little perplexed because this was the first time it happened." *Id.,* at 16. Petitioners seek a broad construction of the statute to excuse their confusion-induced waiver of the right to object and thereby guarantee that Robinson's restitution obligation would not be discharged. In my opinion, however, the statute cannot fairly be read to arrive at the result the majority reaches today.

The Court concludes that a criminal restitution obligation is nondischargeable under 11 U. S. C. § 523(a)(7) because it is

---

[1] Robinson's restitution debt would doubtless have come under 11 U. S. C. §§ 523(a)(2) or (4), which respectively provide that a discharge in bankruptcy will not affect a debt "for obtaining money . . . by . . . false pretenses, a false representation, or actual fraud," or a debt "for fraud or defalcation . . . , embezzlement, or larceny." To prevent discharge of such debts, however, the creditor must make a timely objection and the debtor must receive notice and a hearing. See 11 U. S. C. § 523(c); Bkrtcy. Rule 4007(c).

"a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ." *Ibid.* I find unconvincing the majority's conclusion that the criminal restitution order at issue here is not "compensation for actual pecuniary loss."[2] While restitution imposed as a condition of probation under the Connecticut statute is in part a penal sanction, it is also intended to compensate victims for their injuries. The statute permits a court to require a defendant, as a condition of his probation, to "make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, *for the loss or damage caused thereby* . . . ." Conn. Gen. Stat. § 53a–30(a)(4) (1985) (emphasis added). Were the restitution order purely penal, the statute would not connect the amount of restitution to the damage imposed. Tying the amount of restitution to the amount of actual damage sustained by the victim strongly suggests that the payment is meant to compensate the victim. This comports with the theory underlying restitution sanctions. Restitution is not simply a punishment that incidentally compensates the victim. Indeed, compensation is an essential element of a restitution scheme, under which a wrong to the victim of a crime must be redressed not just by penalizing the offender but by restoring

---

[2] Rather than argue solely that the restitution order fits precisely within the language of § 523(a)(7), the Court appears to rely in part on the fact that, prior to the enactment of the Bankruptcy Code, fines and penalties were rendered nondischargeable in bankruptcy under a judicially created exception to discharge. The majority contends that "Congress enacted the Code in 1978 against the background of an established judicial exception to discharge for criminal sentences," *ante,* at 46, and that Congress should not be deemed to abrogate judicially created law unless it makes explicit the intent to do so. But, far from abrogating judicially created law making fines and penalties nondischargeable as a general matter, Congress has codified that law *and* added the requirements of § 523(a)(7). The historical basis of the exception does not negate the additional limitations expressed in the statute.

the victim, as far as possible, to "the position that [he] would have been in if the original criminal act had never occurred." R. Barnett & J. Hagel, Assessing the Criminal: Restitution, Retribution, and the Legal Process, in Assessing the Criminal: Restitution, Retribution, and the Legal Process 1, 27 (1977); see also *id.*, at 25–28. That the victim has no control over whether restitution will be imposed or in what sum does not mean that the restitution is not compensation for actual pecuniary loss.[3]

Nor do I accept that we can avoid the consequences of respondent's discharge in bankruptcy by finding that the restitution obligation was not a "debt." First, the scope of debts under the Code is expansive. "Debt" is defined in 11 U. S. C. § 101(11) as "liability on a claim," and "claim" is defined in § 101(4) as a "right to payment." The legislative history of the Code indicates that "claim" was to be given the "broadest possible definition." H. R. Rep. No. 95–595, p. 309 (1977); S. Rep. No. 95–989, p. 22 (1978); see also *Ohio v. Kovacs*, 469 U. S. 274, 279 (1985) ("[I]t is apparent that Congress desired a broad definition of a 'claim'"). In light of the broad scope of "debt" under the Code, I agree with the

---

[3] The other qualification in § 523(a)(7), that the fine, penalty, or forfeiture must be "payable to and for the benefit of a governmental unit," is not a consideration here because the restitution order in this case meets this requirement. It does so, however, only because the victim of Robinson's larceny was a government agency. Where the victim is a private individual, it could not legitimately be said that restitution payments destined for that individual are made "for the benefit of a governmental unit." Restitution intended to repay a private victim for the damage done to him is only "for the benefit of a governmental unit" in the sense that the State, which comes within the definition of "governmental unit," see 11 U. S. C. § 101(21), is benefited every time justice is served. The Court appears to take this approach, stating: "The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole." *Ante*, at 52. If the requirement is to be read so broadly, however, *any* fine, penalty, or forfeiture would be for the benefit of a governmental unit, making this qualification in § 523(a)(7) superfluous.

Court of Appeals that the Probation Office had a right to payment, notwithstanding "that the right is enforceable by the threat of revocation of probation and incarceration rather than by the threat of levy and execution on the debtor's property. The right is not the less cognizable because the obligor must suffer loss of freedom rather than loss of property upon failure to pay." *In re Robinson*, 776 F. 2d 30, 38 (CA2 1985).[4]

The definition of "debt" is intentionally broad not only to ensure the debtor a meaningful discharge but also to guarantee as many creditors as possible the right to participate in the distribution of the property of the estate. See H. R. Rep. No. 95–595, *supra*, at 180:

> "[U]nder the liquidation chapters of the [1898] Bankruptcy Act, certain creditors are not permitted to share in the estate because of the non-provable nature of their claims, and the debtor is not discharged from those claims. Thus, relief for the debtor is incomplete, and those creditors are not given an opportunity to collect in the case on their claims. The proposed law will permit a complete settlement of the affairs of a bankrupt debtor,

---

[4] Though Connecticut does not permit the victim to enforce the restitution order as a civil judgment, other jurisdictions do. See, *e. g.*, 18 U. S. C. § 3579(h) (any order of restitution imposed by a federal court "may be enforced by the United States or a victim named in the order to receive the restitution in the same manner as a judgment in a civil action"); Ga. Code Ann. § 17–14–13(a) (1982) ("A restitution order shall be enforceable as is a civil judgment by execution"). Under such statutes, it would be even more difficult to argue that a criminal restitution order does not create a "right to payment" and is consequently not a "debt." Compare *In re Pellegrino*, 42 B. R. 129, 132 (Bkrtcy. Ct. Conn. 1984) ("Since a crime victim has no 'right to payment,' restitution is not a 'debt' under Bankruptcy Code § 101(11)"), with *In re Newton*, 15 B. R. 708, 710 (Bkrtcy. Ct. ND Ga. 1981) (holding that, since Georgia law provided for enforcement of restitution orders by the victim, "in Georgia, an order of restitution is a debt").

and a complete discharge and fresh start" (footnote omitted).

As the Court of Appeals observed, a conclusion that the restitution obligation was not a debt "would produce the anomalous result that no holder of a right to restitution could participate in the bankruptcy proceeding or receive any distributions of the debtor's assets in liquidation. There is no evidence that Congress intended such a result." *In re Robinson*, 776 F. 2d, at 35–36. On the contrary, Congress plainly intended that fines, penalties, and forfeitures be deemed debts eligible to participate in the distribution of the bankruptcy estate, and the statute provides explicitly for that participation. See 11 U. S. C. § 726(a)(4).[5] The very fact that fines, penalties, and forfeitures are made nondischargeable under § 523(a)(7) indicates that they were deemed "debts"; if they were not debts, they would not be affected by discharge, see 11 U. S. C. § 524, and there would be no need to make them nondischargeable.

While I am wholly in sympathy with the policy interests underlying the Court's opinion, "in our constitutional system the commitment to the separation of powers is too fundamental for us to pre-empt congressional action by judicially decreeing what accords with 'common sense and the public weal.' Our Constitution vests such responsibilities in the political branches." *TVA* v. *Hill*, 437 U. S. 153, 195 (1978). Congress might have amended the Code to achieve the result reached here had it confronted the question, but "[i]t is not for us to speculate, much less act, on whether Congress would have altered its stance had the specific events of this case been anticipated." *Id.*, at 185. I would affirm the judgment and permit Congress, if it were so inclined, to

---

[5] The estate is distributed in payment of "claims," see 11 U. S. C. § 726. The legislative history makes clear that the terms "debt" and "claim" "are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." H. R. Rep. No. 95–595, p. 310 (1977).

amend the Bankruptcy Code specifically to make criminal restitution obligations nondischargeable in bankruptcy.[6]  I respectfully dissent.

---

[6] The Court's solution only postpones the problem: its holding that the restitution obligation is nondischargeable under § 523(a)(7) leaves open the possibility that such obligations will be dischargeable under Chapter 13. See 11 U. S. C. § 1328(a), 3 W. Norton, Bankruptcy Law and Practice § 78.01 (1981); 5 Collier on Bankruptcy ¶ 1328.01[1][c] (15th ed. 1986) (broader discharge intended as incentive for debtors to complete performance under Chapter 13 plans); but see *In re Newton, supra*, at 710 (holding restitution order nondischargeable under § 1328).  The Court's opinion therefore does not lay to rest the difficulties the courts will have in coordinating the Bankruptcy Code with state criminal restitution statutes.