### In re EVANS PRODUCTS COMPANY, Debtor.

#### Bankruptcy No. 85–00512–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

April 20, 1988.

Murphy, Weir & Butler, Michael K. Maly, San Francisco, Cal., for Bank of America NT & SA as Agent and Collateral Agent.

Coll, Davidson, Carter, Smith, Salter & Barkett, Francis L. Carter, Miami, Fla., for Unsecured Creditors' Committees of Evans Products Co. and Evans Financial Corp.

Robert A. Mark, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, Fla., for debtor.

## ORDER DENYING MOTION TO REOPEN CASE

### THOMAS C. BRITTON, Chief Judge.

The motion (CP 3006) of A.Z. Hodge to reopen these eight consolidated cases and to retroactively extend the claims bar date in order to consider his claim of $39,391 was heard March 21. The motion is denied.

These related debtors filed for bankruptcy under chapter 11 in March 1985. After a debtors' reorganization plan was rejected by the creditors, a creditors' plan was overwhelmingly accepted and was confirmed in July 1986. When the confirmed plan had been substantially consummated, a final decree was entered and the case was closed October 1, 1987.

This claim arose four years before bankruptcy, when movant was wrongfully discharged as general counsel of Evans Financial-Corporation, one of the debtors. He filed suit in the District of Columbia in 1981 and obtained a jury verdict in February 1984. After a protracted appeal, he got a judgment in July 1987 for $157,616 with interest at the rate of 10.25%.

Movant was not listed as a creditor when these bankruptcies were filed. His charge that this was a deliberately fraudulent act on the part of the debtors' counsel is denied. Movant's grievance against his suc-

cessor is irrelevant here. Respondent is the Evans Asset Holding Corporation, a liquidating corporation formed under the confirmed plan on behalf of creditors, to distribute the remaining assets in accordance with the plan. Movant's successor, like his former employer, now belongs to history.

In December 1985 movant's verdict was reversed by a panel of the Court of Appeals for the District of Columbia. It was not until 14 months later in February 1987 that another panel directed a response to movant's motion for rehearing. That panel subsequently reinstated the judgment with a remittitur.

It was during this 14-month interval, when the claim appeared dead, that the creditors' plan was presented and confirmed. Counsel for the creditor plan proponents, who then first learned of the claim and the appeal, promptly notified both the movant and the court in which he was proceeding of the pending bankruptcy, the automatic stay, and the confirmed plan. It was then, in March 1987, that movant first learned of the bankruptcies.[1]

His present motion, therefore, comes a year after he admittedly had actual knowledge of the bankruptcy, which was seven months before the final decree, distribution to creditors, and the closing of these cases.

### Movant Has Not Shown "Excusable Neglect"

■ The motion to extend the bar date retroactively is governed by B.R. 9006(b)(2):

"... when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order court, the court for cause shown may at any time in its discretion ... (2) on motion made after the expiration of the specified period permit the act to be done *where the failure to act was the result of excusable neglect.*" (Emphasis added).

---

1. In view of his prior association with the debtor, it is remarkable that movant remained oblivious for two years of the bankruptcy of this national corporation, which was widely publicized in all the financial media. However, I accept his statement that his first actual knowledge of the bankruptcy occurred when he was served with notice by reorganization counsel.

As stated in *In re South Atlantic Financial Corp.*, 767 F.2d 814, 817 (11th Cir.) *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1985):

> "Courts have interpreted 'excusable neglect' under Rule 9006(b) and its identically worded predecessor, Rule 906(b), as requiring the movant to show that 'the failure to timely perform a duty *was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.'*" (Emphasis added).

Movant's excuse for not filing this motion during the seven months after he admits actual knowledge of the bankruptcy and before the final decree and closing of the cases is that:

> "at that point Hodge could do nothing towards filing a claim as the case had not yet been decided by the U.S. Court of Appeals and his judgment not yet affirmed." (CP 3006, at 3).

This excuse is not a circumstance "beyond the reasonable control" of the movant. For seven months, nothing prevented movant from filing a claim.

It is clear beyond any question that a claim in bankruptcy need not even be liquidated, much less affirmed by an appellate court. 11 U.S.C. § 101(4), § 502; *Robinson v. McGuigan*, 776 F.2d 30, 34–35 (2nd Cir.1985) *rev'd on other grounds sub nom. Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 43 L.Ed.2d 216 (1986), reviews legislative history.

> " 'claim' means right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(4)(A).

The question is whether movant was aware of his claim; not whether it had been established. Nothing prevented his filing a claim immediately, something laymen do every day. Many other omitted creditors with unliquidated and disputed claims in this bankruptcy successfully did so during the interval when movant, an attorney, did nothing. In fairness to the other creditors, the administration of a corporate reorganization must have an ending.

*Movant's Maximum Claim Is $67*

Although movant claims $39,391.99, his maximum claim against this estate, had it been timely, was $66.99.

His judgment (after a remittitur of $17,383.75) was for $157,616.25. He was awarded interest at the rate of 10.25%. His interest accrues from February 28, 1984, the date of his jury verdict.

Unsecured prepetition claims, like this one, are not entitled in bankruptcy to postpetition interest, with two exceptions not pertinent here. 11 U.S.C. § 502(b); 3 *Collier on Bankruptcy* (15th Ed. 1988) ¶ 502.02[2]. The date of bankruptcy was March 11, 1985.

Had his claim been timely, therefore, movant was entitled to his judgment, plus $16,642.55 interest, plus $808.19 court costs, which totals $175,066.99.

After his verdict, movant's prepetition claim was secured by a supersedeas bond of $175,000. Following the ultimate judgment in his favor, three and a half years later, movant recovered the full amount of the bond.

Movant now argues that he then first applied the bond to interest, calculated to the date he received the bond proceeds, thus leaving him a claim of $39,391.99 as of the date of bankruptcy. He relies upon the "United States Rule" of federal common law that in the absence of a clearly expressed intention by the parties to allocate payments in some other way, payment is first allocated to interest.

■ I disagree. The "United States Rule" has not been and should not be applied to defeat the equality of distribution provided in bankruptcy under Title 11. Section 506(b) provides that:

> "To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the

holder of such claim, interest on such claim....." [2]

In bankruptcy, movant's right to recover postpetition interest is limited by statute to the amount of his collateral. 3 *Collier on Bankruptcy* (15th Ed. 1988) ¶ 502.02[2] n. 22j.

I also reject movant's contention that the respondent liquidating corporation waived the foregoing argument when it withdrew its opposition to the entry of judgment by the federal court. It did so only after it learned of the supersedeas bond, which of course secured payment of the judgment. There is no basis to infer from that act any intent to waive the estate's right to limit movant's recovery to the maximum permitted under Title 11.

Diener & Shapiro, Hialeah, Fla., for debtor.

Robinson & Greenberg, Coral Gables, Fla., Spector, Cohen, Gadon & Rosen, Philadelphia, Pa., for Westfield Financial Corp.

2. Movant's claim is not an "allowed" claim, but if allowed, it was clearly secured.