**Curtis R. RICHMOND and Barbara Richmond, Plaintiff,**

v.

**UNITED STATES of America and Internal Revenue Service, Defendant.**

**No. 97–CV–354 H.**

United States District Court,
S.D. California,
San Diego Division.

July 15, 1997.

George H. Harris Jr., U.S. Department of Justice, Washington, DC.

Robert Plaxico, Assistant United States Attorney, San Diego, CA.

## ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

HUFF, Chief Judge.

On January 8, 1997, the Honorable John J. Hargrove entered an order of judgment which determined and adjudged the following: (1) the Internal Revenue Service ("IRS") was not required to file an adversary proceeding objecting to entry of discharge; (2) the execution of Consents to Extend Time to Access did not constitute a violation of the automatic stay; (3) the time for making the 1978 and 1979 deficiency tax assessments against the plaintiffs did not expire before they initiated their 1990 Chapter 7 case; (4) the IRS' collection efforts did not violate the statute of limitations; and (5) IRS Special Procedures Advisor James Maloney did not commit perjury or obstruction of justice. Pursuant to 28 U.S.C. Section 158(a), plaintiff/appellants Daniel and Barbara Richmond elected to exercise their right to appeal this matter to the United States District Court for the Southern District of California.

Having considered the papers submitted and the law, the court affirms the Order of the Bankruptcy Court in all respects.

## BACKGROUND

In their brief, the Richmonds refer this court to the summary of facts set forth in Judge Hargrove's Memorandum Decision of December 20, 1996, stating "this does an excellent job of reviewing all of the important facts in the case." (Appellants Brief, p. 3). As the government also relies upon the factual recitation set forth in the Memorandum Decision, this court will similarly draw upon that Order for the factual background, which is not in dispute.

The Richmonds' 1978 income tax was due, with extensions, on August 15, 1979. This tax return was actually filed on July 7, 1980, and on August 11, 1980, the IRS assessed the taxes reported due on the 1978 return in the amount of $1,434.00. The Richmonds' 1979 income tax was due, with extensions, on October 15, 1980. This tax return was actually filed on March 27, 1981, and on May 4, 1981, the IRS assessed the taxes reported due on the 1979 return in the amount of $1,186.00.

On July 20, 1982, which was only shortly after the IRS began an investigation to ascertain the correctness of the Richmonds' 1978 and 1979 tax returns, the Richmonds filed a Chapter 7 bankruptcy proceeding, Case No. 82–02974–P7 (USBC S.D.Cal.). On March 18, 1983 and August 12, 1983, the Richmonds executed Special Consents to Extend Time forms (Forms 872–A) for the 1978 and 1979 tax years, respectively. After the IRS sent the Richmonds a statutory notice of deficiency for the years 1978 and 1979, on October 18, 1985, the Richmonds initiated a proceeding in the United States Tax Court regarding these proposed deficiencies. However, on March 16, 1987 the Tax Court granted a joint motion to dismiss the proceeding, on

the premises that the Tax Court lacked jurisdiction since the Richmonds' petition was filed in violation of the automatic stay provisions of 11 U.S.C. § 362(a)(8).

After the Richmonds filed their Chapter 7 proceeding in July of 1982, in 1983 the trustee initiated Adversary Proceeding No. C83–1411–P7 (USBC S.D.Cal.), in which he objected to the Richmonds' discharge. On November 26, 1985, the Bankruptcy Court entered a conditional order of dismissal of the adversary proceeding, without prejudice, for want of prosecution. On September 26, 1986, at the request of the trustee the Bankruptcy Court entered an order vacating the conditional order of dismissal and reinstating the adversary proceeding. On April 1, 1988, the Bankruptcy Court entered an Order in Adversary Proceeding No. C83–1411–P7 which, *inter alia*, denied the Richmonds' a discharge. However, this Order of April 1, 1988 was not entered into the docket of the Richmonds' Chapter 7 proceeding, Case No. 82–02974–P7, nor was any order reflecting or referring to the denial of discharge, or dismissing or closing the Chapter 7 proceeding, ever entered into that case's docket. In addition, although required to do so pursuant to Fed.R.Bankr.P. 4006, the Clerk of the Bankruptcy Court did *not* notify any of the creditors, including the IRS, that an order was issued denying the Richmonds a discharge.

As the IRS was not aware that the Richmonds had been denied a discharge in their Chapter 7 proceeding on April 1, 1988, from May 4, 1988 until November 13, 1990, the IRS sent the Clerk of the Bankruptcy Court at least thirteen requests for information as to the status of the Richmonds' Chapter 7 proceeding. In response to these requests for information, the Clerk consistently informed the IRS that the Richmonds' Chapter 7 proceeding, Case No. 82–02974–P7 was still open, despite the fact that an Order denying discharge was issued in April of 1988.

On January 26, 1989, the Bankruptcy Court entered an order granting Liberty Thrift and Loan relief from the automatic stay in the Richmonds' Chapter 7 proceeding.[1] Neither this order, nor a subsequent order issued on February 13, 1989 made any reference to the Order of April 1, 1988, which denied the Richmonds a discharge. On September 21, 1989, Julie Piazza, an advisor in the Redemption Unit of the IRS' Laguna Niguel office assigned to redeem and auction the property that was the subject of Liberty Thrift's relief, became aware that the Richmonds had been denied a discharge in their bankruptcy case. Although Ms. Piazza had no experience in bankruptcy matters and had no responsibility for monitoring the Richmonds' bankruptcy, as will be discussed below, Judge Hargrove determined that as of this date the IRS was put on notice that the Richmonds' had been denied a discharge in their 1982 Chapter 7 proceeding. After selling and redeeming the real property at issue, the IRS applied the excess proceeds from the sale to a number of the Richmonds' outstanding tax delinquencies.

On June 27, 1989, Curtis Richmond filed a petition commencing a case under Chapter 11 of the Bankruptcy Code, Case No. 89–04904–A11 (USBC S.D.Cal.). The IRS does not dispute that it received notice of this proceeding. On October 30, 1989, this Chapter 11 proceeding was dismissed. On July 27, 1990, the Richmonds filed a second Chapter 7 petition, Case No. 90–06305–H7 (USBC S.D.Cal.), and on November 30, 1990 the Bankruptcy Court entered an Order granting the debtors a discharge.

On April 5, 1993, the IRS made tax deficiency assessments against the Richmonds for the years 1978 and 1979 in the amounts of $26,318 and $9,229, plus applicable interest and penalties. In August of

---

1. Pursuant to 11 U.S.C. § 362(c)(2)(C), the automatic stay should have been terminated when the discharge was denied. Therefore, it would appear to this court that even the Bankruptcy Court itself was not aware that it had denied the discharge on April 1, 1988.

1994, the IRS served Barbara Richmond's employer with a continuing levy on her wages in an effort to collect the Richmonds' 1978 and 1979 tax liabilities.

## DISCUSSION

■ This court reviews the Bankruptcy Court's findings of fact for clear error and the Bankruptcy Court's conclusions of law de novo. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.1990); *In re Carroll*, 903 F.2d 1266, 1269 (9th Cir.1990); Fed.R.Bankr.P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge credibility of the witnesses").

The Richmonds have failed to include a statement of issues to be presented on appeal, as required by Fed.R.Bankr.P. 8006. However, as it appears from their brief that they are challenging all of the rulings of the Order of January 8, 1997, this court will address each issue adjudicated by that Order.

A) *Time for Making 1978 and 1979 Deficiency Assessments*

■ The gravamen of the Richmonds' argument is that at the time they filed their second Chapter 7 petition, July 27, 1990, the time for making 1978 and 1979 deficiency assessments had expired, such that any deficiency assessments were discharged in the second Chapter 7 proceeding. In its Memorandum Order of December 20, 1996, the Bankruptcy Court determined that as of July 27, 1990, since the Richmonds' 1978 and 1979 deficiency tax debts were still assessable against them, but not yet assessed, those debts were exempt from discharge.

In general, 26 U.S.C. § 6501 provides that the IRS is allowed three years, or 1095 days, from the date an income tax return is filed to make an assessment against the taxpayer filing the return. However, 26 U.S.C. § 6503(h) provides that this three year period to make an assessment is suspended during the automatic stay imposed by the filing of a petition under Title 11 of the United States Code. Section 6503 additionally provides that the suspension of the three year assessment period is to be lifted sixty days after the lifting of the automatic stay.

It is not disputed by the Richmonds that they filed their 1978 tax return on July 7, 1980 and their 1979 tax return on March 27, 1981. Therefore, when the Richmonds filed their first Chapter 7 proceeding on July 20, 1982, 743 days had elapsed from the date they filed their 1978 return and 485 days elapsed from the date they filed their 1979 return. In accordance with § 6503(h), sixty days would be added to each assessment period, such that for the 1978 return 412 days remained in the assessment period, and for the 1979 return 670 days remained on the assessment period.

On April 1, 1988, the Bankruptcy Court entered its Order in Adversary Proceeding No. C83–1411–P7, of which the IRS was not a party, which denied the Richmonds their discharge in the Chapter 7 proceeding. Pursuant to 11 U.S.C. § 362(c)(2)(C), at the time a discharge is denied the automatic stay is terminated. However, as described above, this Order denying discharge was *not* entered in the docket of the Chapter 7 case, nor did the Clerk of the Bankruptcy Court give notice to any of the creditors pursuant to Fed.R.Bankr. 4006. In addition, when the IRS sent in thirteen separate requests, between May 4, 1988 and November 13, 1990, for information as to Richmonds' 1982 Chapter 7 petition, not only did the Clerk fail to inform the IRS that the discharge had been denied, but he told them that the case was still open.

In its Memorandum Decision of December 20, 1996, the Bankruptcy Court found that the evidence at trial reflected that the first time the IRS became aware that the Richmonds were denied a discharge in

their 1982 Chapter 7 case was on September 21, 1989. Specifically, this was the date that IRS employee Piazza made an entry in her administrative file relating to the redemption and sale of the Richmonds' property which referenced the denial of discharge. The Bankruptcy Court went on to state "[t]he evidence was unclear as to just where or from whom Piazza received this information, but the Court concludes that this is the first notice that the IRS had of the denial of the Debtor's Discharge." (Mem. Dec. of Dec. 20, 1996, 12:8–10). Given that the IRS did not receive notice of the discharge until September 21, 1989, the Bankruptcy Court held that as of that date the IRS had 412 and 670 days remaining in the assessment periods for the 1978 and 1979 tax returns, respectively.

In making this determination, the Bankruptcy Court rejected the Richmonds' arguments that the IRS had "constructive notice" as of April 1, 1988, or that the IRS should have filed a "Request for Special Notice" to be kept informed of the status of the Chapter 7 case. Instead, the Bankruptcy Court found that "creditors are entitled to rely on Fed.R.Bankr.P. 4006 which requires the Clerk to give notice to all creditors that the Debtors have been denied their discharge." (Mem. Dec. of Dec. 20, 1996, 13:24–26).

In this appeal the Richmonds' argue that the Bankruptcy Court erred in rejecting their contention that the "clock" should have started running for the assessment periods on April 1, 1988, the day that the Order denying discharge was issued. The Richmonds argue that as of April 1, 1988 the discharge was valid, regardless of whether any creditors ever received notice, and cite "Rule 4006.01" and "Section 524.03" as support for this proposition. This court first notes that there is no "Rule 4006.01," but rather only a Rule 4006 which as described above, requires that if an order is entered denying discharge, "the clerk shall promptly give notice thereof to all creditors in the manner

provided in Rule 2002." In addition, although there is also not a specific section "524.03," the court notes that 11 U.S.C. § 524 generally addresses the effects of a discharge; in this case the discharge was denied. As to the Richmonds' cite of Rule 9022 for the proposition that the lack of notice does not affect the time to appeal, the court finds this section to be clearly inapplicable to the present case. Finally, as to the Richmonds' arguments that the automatic stay was in the alternative lifted either after the creditors meeting in 1983 or after the conditional dismissal in 1985, § 362(c)(2)(C) makes it clear that the stay is terminated only when the case is closed, finally dismissed, or a discharge is either granted or denied.

After reviewing the papers of the parties, as well as the record submitted on appeal, this court agrees with the Bankruptcy Court that the IRS was entitled to rely on Rule 4006 to be notified when the discharge was denied. In addition, this court notes that the IRS did inquire into the status of the case at least thirteen times over the two year time period from May of 1988 to November of 1990, only to be misinformed by the clerk that the case was still open and no discharge had been entered. Therefore, this court agrees with the Bankruptcy Court that the IRS did not have notice of the denial of discharge until September 21, 1989, and it was as of that date that the assessment period again began to run.

Given that the assessment period began to run again on September 21, 1989, upon the date of the Richmonds' second Chapter 7 petition, July 27, 1990, only 1012 days elapsed on the time for assessing the 1978 deficiency and 754 days elapsed on the time for assessing the 1979 deficiency. Because the IRS is guaranteed no fewer than 1095 days under 26 U.S.C. § 6501 to make its assessment, at the time the second Chapter 7 petition was filed, the assessment period for both deficiencies were still open. Therefore, pursuant to 11 U.S.C. §§ 523(a)(1) and 507(a)(8)(iii), the

discharge granted on the second Chapter 7 petition did not discharge the Richmonds' from their 1978 and 1979 tax deficiencies, which were "not assessed before, but assessable, under application of law or by agreement, after the commencement of the case." 11 U.S.C. § 507(a)(8)(iii).

The Richmonds also argue that under 11 U.S.C. § 108(c), the IRS had only thirty days after it received notice that the discharge was denied to make its assessment. However, the Ninth Circuit has clearly rejected this position, noting that interpreting § 108(c) literally would allow a debtor to create an "impenetrable refuge" by filing a bankruptcy petition, waiting for § 507's priority periods to expire, and then dismissing the case and refiling shortly thereafter. *In re West*, 5 F.3d 423, 426 (9th Cir.1993), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *see also In re Brickley*, 70 B.R. 113, 115–116 (9th Cir. BAP 1986) (§ 6503 is applicable non-bankruptcy law under § 108(c), such that § 6503 statute of limitations is suspended during automatic stay). In summary, this court affirms the Bankruptcy Court's ruling that at the time the Richmonds filed their second Chapter 7 petition, July 27, 1990, the time for making 1978 and 1979 deficiency assessments had not yet expired, such that any deficiency assessments were not discharged in the second Chapter 7 proceeding.

### B) *Collection Efforts*

On this appeal the Richmonds also argue that the IRS's collection efforts regarding the 1978 and 1979 tax deficiencies violated the statute of limitations contained in 26 U.S.C. § 6502. Pursuant to § 6502, when an assessment of any tax has been made within the proper limitations period, such tax may be collected by levy or by a proceeding in court "within ten years after the assessment of the tax." Although prior to November 5, 1990 the statute of limitations was only six years, when Congress amended the statute it specified that the amendment would apply to taxes as-

sessed on or before the effective date if the period specified in § 6502 had not yet expired.

As to the actual taxes themselves, the parties admitted in the Bankruptcy pre-trial order that the taxes reported for these years were satisfied in 1989. Given the stay imposed by the original Chapter 7 proceeding filed in 1982, it is clear that the IRS was well within the statute of limitations when it collected the actual taxes in 1989. With regards to the deficiency assessments for 1978 and 1979, it is undisputed that these were not assessed until April 5, 1993. As the IRS has until 2003 to initiate collection efforts on these assessments, this court affirms the Bankruptcy Court's ruling that there has been no violation of the statute of limitations contained in 26 U.S.C. § 6502.

### C) *Execution of Consent to Extend Time to Assess Forms (Forms 872–A)*

The Richmonds argue that they were "coerced" into signing a Consent to Extend Time to Assess, Form 872–A, for the year 1978 on March 22, 1983 and for the year 1979 on August 23, 1983. They allege that the signing of these forms, which occurred during the stay imposed after the filing of the original Chapter 7 proceeding, violated the automatic stay.

However, as the Bankruptcy Court explained, under 11 U.S.C. § 362(b)(9) [formerly § 362(b)(8) ], the filing of a Chapter 7 petition does not stay "the issuance to the debtor by a governmental unit of a notice of tax deficiency." The Bankruptcy Court therefore determined that the act of requesting the Richmonds to sign a Form 872–A, which was an attempt to work with the debtors to resolve the prior assessments, was a part of the determination of a tax deficiency and therefore exempt from the stay. *See also In re Hardy*, 39 B.R. 64, 66 (Bankr.E.D.Pa.1984) (notice of tax deficiency and any forms sent before it fall under notice of tax deficiency exemption).

This court agrees, and therefore affirms the Bankruptcy Court's ruling that the execution of the Consent to Extend Time Forms did not constitute a violation of the stay.

### D) *Filing of Adversary Proceeding*

■ The Richmonds claim that in order for their 1978 and 1979 tax deficiencies to be exempted from discharge in their second Chapter 7 petition of 1990, the IRS was required to file an adversary proceeding seeking such a declaration from the Bankruptcy Court. This court disagrees. Under § 523(c)(1), a creditor is required to file a complaint *only* if the debt to be excepted from discharge falls under Section 523(a)(2), (4), (6), or (15). *Kelly v. Robinson*, 479 U.S. 36, 42–43 n. 4, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (with the exception of those debts listed under § 523(a)(2), (4), (6), or (15), all other debts are automatically excepted from discharge under § 523(a)(1)). Therefore, as described above, under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(iii), the Richmonds' 1978 and 1979 tax deficiencies were clearly exempted from discharge. Consequently, this court affirms the ruling of the Bankruptcy Court that the IRS was not required to file an adversary proceeding objecting to the entry of discharge with respect to the Richmonds' 1978 and 1979 deficiency tax debts.

### E) *IRS Special Procedures Advisor James Maloney*

In a declaration, IRS Special Procedures Advisor Maloney stated that he believed the IRS acted in a correct matter. The Richmonds now argue that since, in their view, the IRS did not act in a correct matter, Mr. Maloney must have committed perjury. The court rejects this argument and finds that there is nothing in the record to indicate any improper behavior on the part of Mr. Maloney. Therefore, this court affirms the ruling of the Bankruptcy Court that IRS Special Procedures Advisor Maloney did not commit perjury.

## CONCLUSION

Having considered the papers submitted and the law, the court affirms the Order of the Bankruptcy Court in all respects.

IT IS SO ORDERED.