In re Tom Glenn HENRY, Debtor.

Tom Glenn HENRY, Plaintiff,

v.

UNITED STATES of America (Department of Health and Human Services, Department of Justice, and Department of Treasury), Defendant.

Bankruptcy No. 96–665–APG.
Adversary No. 96–167–APG

United States Bankruptcy Court,
M.D. Alabama.

April 28, 1997.

Romaine S. Scott, III, Birmingham, AL, for debtor.

Patricia Allen Conover, Montgomery, AL, for U.S.

## OPINION

A. POPE GORDON, Bankruptcy Judge.

The debtor filed a complaint requesting, *inter alia,* damages under 11 U.S.C. § 362(h) and equitable subordination of the government's claims under 11 U.S.C. § 510(c)(1) to

the interests of the debtor in property of the estate.[1]

The parties submitted the above issues to the court based on briefs of counsel.

The undisputed facts are as follows.

The debtor filed a petition for relief under chapter 11 on February 14, 1996 while serving a federal prison sentence for illegal activities related to Medicare and Medicaid fraud.[2]

The debtor had outstanding restitution obligations to both the United States Department of Health and Human Services and the Tennessee Department of Health and Physical Services.[3]

The debtor elected to participate in a financial responsibility program at the prison under which the debtor contributed a percentage of his prison wages toward payment of restitution.[4]

The program is operated by the Bureau of Prisons pursuant to the Code of Federal Regulations. The program is designed to encourage inmates to meet their "legitimate financial obligations."[5]

Participation in the program is purely voluntary. However, inmates refusing to participate in the program are not eligible to receive privileges specified in the regulations.[6]

The debtor contributed $770.00 toward payment of restitution under the program after filing the petition and before release from prison. At no time following the petition did the debtor request removal from the program.

The debtor filed the instant complaint under 11 U.S.C. § 362(h) alleging that the United States willfully violated the automatic stay by "actively engag[ing] in the garnishment of the Debtor's wages for a time which has continued into the post-petition period." The debtor requested compensatory damages in the amount of $250,000.00 and punitive damages in the amount of $4,000,000.00.[7]

The automatic stay is one of the "fundamental debtor protections" afforded by the Bankruptcy Code.[8] However, the stay benefits not only the debtor but also the debtor's property and his creditors:

The stay provides the debtor with relief from the pressure and harassment of creditors seeking to collect their claims. It protects property that may be necessary for the debtor's fresh start and, in terms of a chapter 11 debtor, provides breathing space to permit the debtor to focus on its rehabilitation or reorganization. In addition, the stay provides creditors with protection by preventing the dismemberment of a debtor's assets by individual creditors levying on the property. This promotes

1. The district court withdrew the reference of this proceeding with regard to Counts I and II of the complaint. *See* 28 U.S.C. § 157(d). A motion is currently pending before the district court to withdraw the reference with regard to Count IV of the complaint. This opinion addresses only the issues raised by Count III of the complaint.

2. The debtor had owned and operated several Tennessee home health care agencies.

3. The federal district court ordered the debtor to pay $3.6 million in restitution to the United States Department of Health and Human Services and $821,177.36 in restitution to the Tennessee Department of Health and Physical Services.

4. The debtor commenced participation in the program prior to filing the chapter 11 petition. All inmates are required to work if they are physically and mentally capable of working. 28 C.F.R. § 545.20. Performance pay is discretionary with the warden. *Id.*

5. *See* 28 C.F.R. § 545.10. The regulations title the program "Inmate Financial Responsibility Program." Payments under the program benefit all crime victims for whom a court has ordered restitution in addition to government creditors. 28 C.F.R. § 545.11(a)(2).

6. *See* 28 C.F.R. § 545.11(d) itemizing results of refusing to participate in the program, including limited wages and the absence of furlough.

7. The debtor has not proved any damages above the amounts actually paid through the program plus costs and attorney's fees associated with this adversary proceeding. The government has not waived sovereign immunity for an award of punitive damages. 11 U.S.C. § 106(a); *Jove Eng'g, Inc. v. Internal Revenue Service (In re Jove Eng'g)*, 92 F.3d 1539, 1558 (11th Cir.1996).

8. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S. Code Cong & Admin News 1978, p. 5787.

the bankruptcy goal of equality of distribution.[9]

11 U.S.C. § 362(a) specifies the conduct which violates the automatic stay. After a careful analysis of § 362(a), the court concludes that the government engaged in none of the proscribed conduct.

11 U.S.C. § 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."[10]

"To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings."[11]

The legislative history of § 362(a)(6) illustrates the concern Congress had in preventing creditors from collecting a prepetition debt:

> Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors.[12]

In the case *sub judice*, the Department of Health and Human Services did not engage in any "act to collect" from the debtor.[13] The Department did not procure either the debtor's participation in the program or the payments made under the program.

Neither did the Bureau of Prisons "act to collect" from the debtor.[14] The Bureau withheld the payments from the debtor's wages at the debtor's request under force of federal regulations.[15] The Bureau had a legal obligation to withhold the payments as long as the debtor elected to remain in the program.[16]

Therefore, the act for which the debtor complains was committed by the debtor himself. In addition, the purpose of any action by the government was not "to collect" but to encourage inmate financial responsibility.[17]

The court holds that the unsolicited receipt of payments by the United States Department of Health and Human Services under the voluntary inmate financial responsibility program did not violate the automatic stay.

The court also holds that the Bureau of Prisons did not violate the automatic stay by acting in accordance with federal regulations in withholding restitution payments from the

---

9. 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 362.03, at 362–13 (15th ed.1996).

10. 11 U.S.c. § 362(a)(6) is the only subsection even arguably applicable. 11 U.S.C. § 362(a)(1) does not apply. Neither the Department of Health and Human Services nor the Bureau of Prisons commenced or continued any "action or proceeding" against the debtor. *See* § 362(a)(1). Indeed, the Department may not have the right to enforce the restitution obligation in a civil proceeding. *See Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 558–59, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588, 596 (1990).

11. *Black's Law Dictionary* 263 (6th ed.1990).

12. H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 50–51 (1978), U.S. Code Cong. & Admin. News, 1978, pp. 5836–5837,6298.

13. The court is unwilling to conclude that the Bureau of Prisons acted as the agent of the Department of Health and Human Services in withholding the payments any more than the Bureau of Prisons acts as an agent of any other creditor to whom restitution is owed.

14. The Bureau of Prisons is part of the United States Department of Justice.

15. *See* 28 C.F.R. §§ 545.10 and 545.11.

16. *Id.*

17. 11 U.S.C. § 362(a)(6) and 28 C.F.R. § 545.10. *See Hucke v. Oregon*, 992 F.2d 950, 953 (9th Cir.1993). "It seems clear that a criminal court may revoke probation, or penalize the debtor, for the failure to pay criminal restitution or a criminal fine, unless of course the object of the proceeding is to recover a claim against the debtor." 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 362.05[2], at 362–47 (15th ed.1996).

*See United States ex rel. Farmers Home Admin. v. Nelson*, 969 F.2d 626 (8th Cir.1992) (FmHA supervisor did not violate the automatic stay by sending letter required by federal regulations to debtor's counsel which explained loan servicing options without threatening legal action to collect). A non-coercive, non-harassing letter sent by a creditor to the debtor suggesting reaffirmation of the debt does not violate the automatic stay. *In re Duke*, 79 F.3d 43 (7th Cir.1996).

debtor's prison wages at the debtor's request.

These results do not contravene the policies underlying the imposition of the automatic stay.[18] The payments were initiated by the debtor without any "pressure or harassment" from the government "to collect." [19] The payments were not made from property of the chapter 11 estate and therefore did not "dismember" estate assets.[20] In addition, the payments were applied to reduce a debt which is not subject to discharge in this chapter 11 case.[21]

This case is distinguishable from a case in which a creditor commences a garnishment or other collection action prepetition which the creditor fails to release postpetition.[22] The government did not commence the debtor's participation in the program and had no duty to terminate the debtor's participation postpetition.[23]

Indeed, the Bureau could not have terminated the debtor's participation in the program without also denying to the debtor the privileges afforded by the program.[24]

However, the debtor could have terminated his participation in the program at any time. He did not. The debtor decided that the benefits of the program warranted making the payments.[25]

The court is mindful of the dilemma of the debtor. The federal regulations made participation in the program very appealing. However, the court is also mindful of the goal fostered by the program of encouraging "each sentenced inmate to meet his or her legitimate financial obligations." [26] The Code of Federal Regulations apportions both privileges and responsibilities to prisoners in achieving that goal.[27] The balance struck between those privileges and responsibilities should not lightly be disturbed.[28]

The debtor's actions are inequitable. The debtor made payments inuring to his own benefit and then sued for millions because the government accepted the payments.[29]

■ The debtor also requests equitable subordination of the government's claims un-

18. *See supra* text p. 3.

19. *3 Lawrence P. King*, Collier on Bankruptcy § 362.03, at 362–13 (15th ed.1996).

20. 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 362.03[8][c], at 362–33 (15th ed.1996).

21. *See* 11 U.S.C. § 523(a)(7) and *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Section 523(a)(7) applies to chapter 11 cases. 11 U.S.C. § 103(a).

22. *See Mitchell Constr. Co., Inc. v. Smith (In re Smith)*, 180 B.R. 311 (Bankr.N.D.Ga.1995).

23. The debtor voluntarily commenced payments under the program prepetition and allowed the payments to continue postpetition.

24. The Bureau of Prisons did not have the authority to extend the privileges of the program to inmates refusing to make payments under the program. The court notes that none of the privileges are inherent rights of prisoners. *See United States v. Sanchez–Estrada*, 62 F.3d 981, 991 (7th Cir.1995): "No one in their right mind ever said that prison should be easy, for it is supposed to be a restraint on one's freedom as well as his enjoyment of the better things of life for a definite period of time."

25. The debtor states in affidavit:

While I could have withdrawn from the program, to do so would have had a drastic effect on any furloughs and on the date of my release to the halfway house and to supervised release. I could not refuse to participate in the deductions from my wages and remain in the program which governed some of the substantial effects of my imprisonment. An example of the furlough request I was required to sign is attached hereto as Exhibit 2. At the bottom of the page is the statement that "Furlough approved if inmate signs up for $100.00 per month FRP [Financial Responsibility Program]."

26. *See* 28 C.F.R. § 545.10.

27. As explained *supra*, a prisoner receives privileges in exchange for acting responsibly financially. *See* 28 C.F.R. § 545.10 *et seq.*

28. *See supra* note 24. Requiring a prison to extend to inmates the privileges of the program without the responsibilities of the program would not only disturb that balance but also violate the Code of Federal Regulations. *Cf. Kelly*, 479 U.S. at 49, 107 S.Ct. at 360–61 (discharging state restitution obligations in bankruptcy would "limit the rehabilitative and deterrent options available to state criminal judges.")

29. The debtor benefitted both from the privileges afforded by the program as well as the reduction of a nondischargeable debt.

der 11 U.S.C. § 510 to the interests of the debtor in property of the estate. However, § 510 does not allow the requested relief: "a claim may only be subordinated to a claim and not to an equity interest." [30]

A separate order will enter denying the debtor's claims against the government for damages under 11 U.S.C. § 362(h) [31] and for

equitable subordination of the government's claims under 11 U.S.C. § 510(c).

30. 4 Lawrence P. King, *Collier on Bankruptcy 1* 510.01, at 510–4 (15th ed.1996). In addition, the conduct of the government in connection with the alleged stay violation does not justify equitable subordination of the government's claim. The debtor did not assert any other ground as a basis for equitable subordination.

31. Even if construed as a stay violation, the payments would at most constitute a mere technical violation—not a willful violation for which dam-

ages may issue under § 362(h). The violation would be deemed waived by the debtor because (1) the payments were voluntary and (2) the debtor has no fiduciary duty as a trustee to creditors with regard to non-estate property. *See* 11 U.S.C. § 1107. However, even if not waived, the debtor would not be entitled to offset the amount of the payments against the government's claims because the debtor has already received credit for the amounts paid.