**In re Fred CURREY d/b/a Owyhee Cattle Co. and L. Annette Currey, Debtors.**

**C. Barry ZIMMERMAN, Trustee, Plaintiff,**

v.

**ITANO FARMS, INC., Does I through V, inclusive, and Ronald D. Schoen, Chapter 12 Trustee, Defendants.**

**Bankruptcy No. 91–02735.
Adv. No. 92–6039.**

United States Bankruptcy Court,
D. Idaho.

Aug. 31, 1992.

---

Barry A. Peters, Boise, Idaho, for plaintiff.

Richard B. Eismann, Nampa, Idaho, for defendants.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

This is a preference action. The relevant facts have been stipulated by the parties.

In April, 1991, Debtor Fred Currey was convicted of passing bad checks to Defendant Itano Farms, Inc. arising out of a purchase by Debtor of cattle from the Defendant. The state criminal court placed Debtor on probation and ordered that he pay Defendant restitution in the amount of $50,250, the face amount of the worthless checks.

On August 19, 1991, Debtor and his wife filed for Chapter 7 relief. The Plaintiff is the trustee of their bankruptcy estate. During the ninety days prior to the filing of this petition, Debtor made three restitution payments to Defendant Itano Farms, Inc. totaling $14,821. Plaintiff seeks to recover these payments as preferences under Section 547(b) of the Bankruptcy Code.[1]

From the record and briefs of the parties, it appears that the only defense offered to Plaintiff's claim by Defendants is the argument that the restitution payments made by Currey to Itano Farms, Inc. under the state court order were not "to or for the benefit of a creditor ..." as required by Section 547(b)(1). This contention relies upon the analysis and language of the decision by the U.S. Supreme Court in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

In *Kelly*, the issue decided by the Court was whether a state court ordered obligation to make restitution to the victim of a crime could be discharged in the offender's Chapter 7 case. The Court held that such an obligation was not discharged by virtue of an expansive reading of the exception

found in Section 523(a)(7) of the Code for debts "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit...." 11 U.S.C. § 523(a)(7). In its analysis, the Court suggested that restitution obligations are not payments solely for the benefit of the victim, but rather for the benefit of society as a whole. *Kelly*, 479 U.S. at 52, 107 S.Ct. at 362. Therefore, the obligation fell within the statutory language excepting it from discharge, the Court reasoned.

The Court in *Kelly*, because of its approach, was not required to address another argument offered by the victim that the restitution obligation was not discharged because it did not constitute a "debt" as defined by the Code. While the Court expressed "serious doubts" about the intention of Congress to include the restitution obligation as a debt for discharge purposes, it expressly declined to decide this question. *Id.* at 50, 107 S.Ct. at 361. Because of the nature of the Court's ruling, its comments on this issue are therefore *dicta*, notwithstanding Defendant Itano Farms' arguments otherwise. However, the Court's analysis in the text of this decision is certainly relevant.

The *Kelly* decision instructs that because a restitution order arises out of a state's interest in rehabilitation and punishment of the offender-debtor, and not strictly because of the victim's desire for compensation, that discharge of the obligation under the federal bankruptcy laws could potentially frustrate the purpose of the state criminal proceedings. Congress would likely not intend, according to the Court, to hamper the flexibility of the state courts in conducting its legitimate endeavors in such manner. *Id.* at 49, 107 S.Ct. at 360.

While not a binding holding by the Supreme Court, this discussion was sufficiently persuasive to be adopted by at least one lower court in *In re Nelson*, 91 B.R. 904 (N.D.Cal.1988), a case with facts very sim-

---

1. Defendant Itano Farms, Inc. is a Chapter 12 debtor operating under a confirmed plan. Defendant Schoen is the Chapter 12 trustee and disbursing agent under the plan and was joined in this litigation by stipulation of the parties.

The plan calls for liquidation of Itano Farms' assets and payment of all claims, with any excess to be paid over for the benefit of the stockholders of that company.

ilar to the action at bar. Relying upon *Kelly,* the Court found that the trustee could not recover the payments made to the beneficiary of a restitution order as a preference:

> The Court believes that a fair reading of *Kelly* leaves little doubt about the proper outcome of this appeal. While an historical exception to avoidance of restitution does not appear to be as clearly established as the exception for discharge of restitution, this Court finds that the reasons for an exception are similarly compelling.

91 B.R. at 906. The *Nelson* court goes on to describe the recovery of restitution payments as preferences by the offender's trustee as "an ironic and unseemly specter [that] would impose undue burdens and uncertainties on the state (not to mention the victim), would lead to federal remission of state criminal judgments, and would hamper the sentencing decisions of state judges." *Id.*

Were the above the current state of the statutory and case law on this topic, this Court might accept Defendants' position without much difficulty. Under the *Kelly* approach, Defendant here should not be a creditor because the restitution obligation would not be a "debt" for bankruptcy law purposes. After *Kelly* and *Nelson,* though, the Supreme Court issued its decision in *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). The opening paragraph of that decision succinctly summarizes its holding:

> "In *Kelly v. Robinson,* 479 U.S. 36, 50 [107 S.Ct. 353, 361, 93 L.Ed.2d 216] (1986), this Court held that restitution obligations imposed as conditions of probation in state criminal actions are non-dischargeable in proceedings under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* The Court rested its holding on its interpretation of the Code provision that protects from discharge any debt that is "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." § 523(a)(7). Because the Court deter-

mined that restitution orders fall within § 523(a)(7)'s exception to discharge, it declined to reach the question whether restitution orders are "debts" as defined by § 101(11) [now § 101(12) ] of the Code. In this case, we must decide whether restitution obligations are dischargeable debts in proceedings under Chapter 13, § 1301 *et seq.* The exception to discharge relied on in *Kelly* does not extend to Chapter 13. We conclude, based on the language and structure of the code, that restitution obligations are "debts" as defined by § 101(11). We therefore hold that such payments are dischargeable under Chapter 13."

*Davenport,* 495 U.S. at 555, 110 S.Ct. at 2129.

The Court's analysis in *Davenport,* as compared to the historical and policy-based methods used in *Kelly,* was founded on "the fundamental canon that statutory interpretation begins with the language of the statute itself." *Id.* at 557–58, 110 S.Ct. at 2130. Reviewing the definitional provisions of the Code for the terms "debt" and "claim," the Court found Congress intended an expansive meaning for such terms; that a restitution order was properly included within the definition of these terms; and that therefore, restitution orders created "debts" as that word is used by Congress in the Code. The Court was naturally compelled to distinguish its holding in *Kelly:*

> "Contrary to petitioners' argument, however, the Court's prior characterization of the purposes underlying restitution orders does not bear on our construction of the phrase "right to payment" in § 101(4)(A), [an essential element to a "debt" under the Code]. The Court in *Kelly* analyzed the purposes of restitution in construing the qualifying clauses of § 523(a)(7), which explicitly tie the application of that provision to the purpose of the compensation required. But the language employed to define "claim" in § 101(4)(A) makes no reference to purpose. The plain meaning of a "right to payment" is nothing more nor less than an enforceable obligation, regardless of

the objectives the State seeks to serve in imposing the obligation."

*Id.* at 559, 110 S.Ct. at 2131.

In other words, according to the Court, had Congress intended that the term "debt" in the Code exclude restitution obligations, it would have had no reason to specifically except such from discharge in Section 523(a)(7). However, since this exception does not apply to Chapter 13, it must therefore be assumed that Congress intended restitution obligations to be dischargeable in such proceedings, a deliberate and proper exercise of the legislative body's province to make public policy choices. *Id.* at 563, 110 S.Ct. at 2133.

Later in 1990, Congress amended Section 1328(a) of the Code to add a new exception to discharge in Chapter 13 cases for "restitution included in a sentence on the debtor's conviction of a crime." 11 U.S.C. § 1328(a)(3) as enacted in Pub.L. No. 101–581 (1990). Senator Grassley, in his floor statement on the legislation creating the Chapter 13 discharge exception criticized the majority holding in *Davenport,* praised the opinion written by the dissenters, Justices Blackmun and O'Connor, and observed that "the filing of chapter 13 bankruptcy by an assortment of welfare cheats, crooks, and even violent criminals has become a kind of 'growth industry' in the wake of *Davenport.*" 136 Cong.Rec. S17603 (daily ed. Oct. 27, 1990) (statement of Sen. Grassley).

As can be seen, while restitution orders have been given attention by the Supreme Court and Congress in the particular context of dischargeability under the Bankruptcy Code, *no study has been given by these bodies to the preference issue.* Defendants suggest *Kelly* should serve as this Court's beacon. Plaintiff urges the more mechanical "plain meaning" approach exhibited in *Davenport.* Congress has yet to specifically speak to the subject. The position of the Court is a difficult one, however, for the several reasons set forth below, this Court would conclude that Defendant Itano Farms was a "creditor" for purposes of the preference provisions of the Bankruptcy Code, and that therefore, the payments it received under the restitution order from Debtor are avoidable by Plaintiff as a Chapter 7 trustee.

Initially, the Court finds that *Davenport,* not *Kelly,* is the Supreme Court authority applicable to the analysis of the question posed in this action. Here, the issue before the Court is whether the payments to Defendant Itano Farms were made "to or for the benefit of a creditor" as required by Section 547(b)(1), all other elements of a preference presumably being conceded by Defendants. Was Defendant a creditor of Fred Currey when it received the payments? Since the Court is asked to review the meaning of terms actually defined by the Code, the language of the statute, not historical implications or policy considerations, is the most appropriate point of reference. *Davenport,* 495 U.S. at 557–58, 110 S.Ct. at 2129–30.

The term "creditor" is defined by the Code as including any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor...." 11 U.S.C. § 101(10). The filing of a joint petition commencing this Chapter 7 case constitutes an order for relief as to these Debtors. 11 U.S.C. § 302(a). A "claim" as defined by Section 101(5) of the Code means a "right to payment." *Davenport* holds that the broad definition of "claim" includes a right to payment under a restitution order. 495 U.S. at 559–60, 110 S.Ct. at 2130–32. Therefore, on the date of the filing of the petition, as well as the date of receipt of the payments, Defendant Itano Farms had a right to payment from Debtor under the restitution order, and was accordingly a creditor as to Fred Currey.

While *Kelly* is not controlling, the *Davenport* approach and result does not run afoul of the policies and concerns expressed in the earlier decision. First of all, neither Defendants nor the *Nelson* decision provide an historical statutory or decisional basis for excepting restitution payments from preference recovery, as was the case for excepting discharge of those obligations under Chapter 7. In not protecting such payments from recovery, the Court

does not abrogate any accepted principle crafted by the courts and in existence at the time the Code was enacted. *Id.* at 563, 110 S.Ct. at 2133.

Likewise, where cancellation of the obligation to pay a restitution obligation could amount to invalidation of the state court's order, it is doubtful such would be the effect of allowing a preference recovery of the payments. While not an issue now precisely raised in this case, there is authority under Section 502(h) of the Code for the proposition that recovery of the restitution payments would have the effect of reinstatement of the Debtor's obligation to make those payments. *See In re Hackney,* 93 B.R. 213, 218 (Bankr.N.D.Cal.1988). That is, if the payments made prepetition are recovered by the Plaintiff, Defendant would again have a claim for the monies against Debtor.

In this regard, Defendant's argument that it would be unfairly penalized for the benefit of Currey's creditors if the payments are avoided may be misplaced, since the restitution obligation is nondischargeable under *Kelly* in the Chapter 7 case, and must eventually be paid. The burdens of preference recovery, then, would fall on the Debtor, not on Defendant, a result in line with the theory of excepting such debts from discharge. In addition, if the payments are avoided, Defendant Itano Farms is granted additional time to file a proof of claim in the Currey proceeding and to share in any dividends distributed to the creditors. *See* F.R.B.P. 3002(c)(3).

In this situation, there is no "federal remission of state criminal judgments", *Nelson,* 91 B.R. at 906, since the restitution order remains fully enforceable. As indicated in *Davenport,* minimization of interference in areas of legitimate state interest is certainly an important concern, but such "cannot justify rewriting the Code to avoid federal intrusion. Where, as here, congressional intent is clear, [the] sole function [of the courts] is to enforce the statute according to its terms." *Davenport,* 495 U.S. at 564, 110 S.Ct. at 2133–34.[2]

The actions of Congress in overruling the Supreme Court's specific holding by subsequent enactment of a Chapter 13 exception to discharge does not convince this Court that a *Davenport* analysis should not be applied here. The decision was an attempt to glean the intent of Congress from the language of the statute as it existed when the case was decided, the proper endeavor for this Court as well, not to speculate as to the prevailing opinion of the majority of the current members of Congress. Even were such an exercise constructive, since Congress has not enacted an amendment to the provisions of Section 547 to protect restitution payments from preference recovery, but has rather only concerned itself with discharge of such obligations, the Court could conclude that the legislature felt no need to preclude avoidance.

This discussion is based on the Court's opinion that the restitution order creates a claim against Debtor Fred Currey. The parties focus their attentions on this narrow issue. Arguably, though, even if the restitution order constitutes a "claim" against the Debtor, who is the holder of the claim and therefore the creditor? The restitution order compels payment by Currey to the victim (i.e. Defendant) via the clerk of the state court. On its face, the order is equivocal as to whether Defendant Itano Farms has a claim against Debtor, or whether the claim is held by the State. While in *Kelly* the Court held that payments under such an order are made "to or for the benefit of a governmental unit," *Kelly,* 479 U.S. at 55, 107 S.Ct. at 363, this does not mean the payments could not also be deemed "to or for the benefit of" Itano Farms as the victim of the crime. That is, nothing in *Kelly* or the Code suggests that there cannot be *two* creditors created by virtue of the restitution obligation, the victim *and* the government. This point could require further analysis were it not for the fact that, in the opinion of this Court, Defendant occupied the position of a creditor

---

**2.** Not documented in the record, but presumably, Debtors' discharge of the bulk of their indebtedness could actually place Fred Currey in a better position to make future restitution payments.

as to Debtor separate and distinct from any status created by the restitution order.

Under applicable state law, Defendant held a claim against Debtor based on the dishonor of the checks independent from any obligation created via the criminal prosecution. Idaho Code §§ 28-3-507 and 1-2301A. Defendant would have an enforceable right to payment based on the checks even if no grounds existed to charge Currey with a crime. Clearly, then, Defendant Itano Farms was Debtor's creditor as defined by the Code without regard to the restitution order.

Accordingly, the Court finds that the Defendant Itano Farms, Inc. was a creditor of Debtor Fred Currey at the time of its receipt of the restitution payments, and that those payments are avoidable by the Plaintiff as trustee under Sections 547(b) and 550(a) of the Bankruptcy Code. This Memorandum constitutes the Court's findings of fact and conclusions of law. F.R.B.P. 7052. Counsel for Plaintiff shall submit an appropriate form of judgment for entry by the Court.