**In re Craig Norman BALL, Debtor.**

**Louis A. Movitz, Chapter 7 Trustee, Plaintiff,**

v.

**Maricopa County, Defendant.**

**Bankruptcy No. B–99–09154–PHX–RJH. Adversary No. 00–00593.**

United States Bankruptcy Court, D. Arizona.

Jan. 9, 2001.

Terry Dake, Phoenix, Arizona, for trustee.

Barbara Lee Caldwell, Hebert Schenk & Johnsen, P.C., Phoenix, Arizona, for Maricopa County.

## OPINION

RANDOLPH J. HAINES, Bankruptcy Judge.

The Chapter 7 Trustee is entitled to summary judgment in this adversary pro-

ceeding to recover a preferential transfer by the Debtor to the Maricopa County Attorney's Office.

**Factual Background**

The material facts are not disputed. Prior to filing the bankruptcy petition, the Debtor wrote a number of checks to Ribelin Sales, a creditor of the Debtor. Eleven of those checks, written between September and November, 1998, were returned for insufficient funds. Ribelin Sales tendered the checks to the Maricopa County Attorney's Office, Bad Check Division, in an attempt to collect on the returned checks.

The Maricopa County Attorney's Office prosecuted the Debtor for issuing bad checks, pursuant to Arizona Revised Statutes ("A.R.S.") § 13–1807.[1] The Debtor subsequently paid $10,000.00 to the County Attorney's Office on July 14, 1999.[2] The County Attorney's Office paid $8,855.81 to Ribelin Sales[3] and kept the balance of $1,144.19 as a fee pursuant to A.R.S. § 13–1809.[4] The Debtor filed Chapter 7 on August 2, 1999, which was within ninety days of the payment to the Maricopa County Attorney's Office.

The Chapter 7 Trustee takes the position that the $10,000.00 payment made by the Debtor within ninety days of the bankruptcy petition is an avoidable preferential transfer pursuant to 11 U.S.C. § 547. Ribelin Sales has returned to the Chapter 7 Trustee the $8,855.81 that it received from the Maricopa County Attorney's Office. On September 18, 2000, the Trustee filed this adversary complaint seeking a judgment against Maricopa County[5] in the amount of the $1,144.19 fee withheld by the County, plus the Trustee's costs and attorneys' fees.

1. A.R.S. § 13–1807(A) provides: "A person commits issuing a bad check if the person issues or passes a check knowing that the person does not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check as well as all other checks outstanding at the time of issuance."

2. The County initially argued that the monies were paid by a third party, rather than by the Debtor. The Trustee has submitted an affidavit from the Debtor which states that the $10,000.00 derived from the Debtor's sale to his sister of his half interest in a house. Since the Debtor's bank accounts were subject to garnishment, he deposited the money into a girlfriend's account, and she wrote the check to the County. The County has not disputed the Debtor's affidavit. The facts are strikingly similar to those in *Dean v. Davis*, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917), although in this case the defendant is not the relative who provided the funds to help the debtor avoid prosecution, but rather a recipient of some of those funds.

3. Presumably this amount was turned over to Ribelin Sales pursuant to A.R.S. § 13–1809(B), which provides in pertinent part: "A person who is charged with an offense under this chapter may make restitution for the bad checks. Restitution shall be made through the prosecutor's office if collection and processing were initiated through that office."

4. A.R.S. § 13–1809(C) provides that the "county attorney may collect a fee if the county attorney's office collects and processes a check if the check is issued or passed in a manner which makes the issuance or passing an offense under ... § 13–1807...." A.R.S. § 13–1809(E) provides that the amount of this fee shall be $50 if the face amount of the check does not exceed $100, $75 if the face amount of the check is greater than $100 but does not exceed $300, $100 if the face amount of the check is greater than $300 but does not exceed $1,000, and 15% of the face amount of the check if the check is greater than $1,000.

5. The Trustee filed the adversary complaint against Maricopa County, and not specifically against the Maricopa County Attorney's Office. While the County has half-heartedly suggested that the Trustee has named the wrong party by not specifically bringing suit against the Maricopa County Attorney's Office, or the present Maricopa County Attorney, Mr. Richard M. Romley, the Court recognizes that the Maricopa County Attorney's Office and Maricopa County are part of the same political subdivision of the state of Arizona, and that pursuant to A.R.S. § 13–1811(B) the county attorney is directed to transmit any fees collected pursuant to §§ 13–1809 and 13–1810 to the county treasurer for deposit into a separate "bad check' trust fund." The Court finds that the Trustee has properly named Maricopa County as the defendant in this case.

The Maricopa County Attorney's Office maintains that the $1,144.19 is not an avoidable preference because the fee was collected pursuant to A.R.S. § 13–1809. Maricopa County asserts that the fee paid is not an avoidable transfer because the County Attorney's Office was not a creditor of the Debtor. The County also argues that the payment of the fee was in the nature of restitution and cannot be avoided as a preference.

### The County Was a Creditor for Its Bad Check Processing Fee

■ The County's principal argument is that "the County Attorney's Office is not a creditor." Because "creditor" includes any "entity that has a claim against the debtor that arose ... before the order for relief," 11 U.S.C. § 101(10), and "entity" includes a "governmental unit," 11 U.S.C. § 101(15), which indisputably includes the County, the essence of this argument must be that the County's prepetition entitlement to fees pursuant to A.R.S. § 13–1809 does not constitute a "claim." The County does not explain how its right to collect the bad check processing fee is not a claim.

Regardless of what the fee may be called,[6] it is a "right to payment," which makes it a claim pursuant to 11 U.S.C. § 101(5).

Some question whether a criminal restitution constitutes a claim was created by *dicta* in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), where the Court considered whether a criminal restitution obligation, imposed as a condition of probation, was dischargeable in a chapter 7 case. The Court noted that some courts had construed the prior Bankruptcy Act to exclude "criminal penalties" from the discharge, and others had ex-

panded this exclusion to restitution obligations imposed as part of a criminal sentence. 107 S.Ct. at 359. One state court concluded that such a restitution obligation "does not create a debt nor a debtor-creditor relationship...." *Id., quoting State v. Mosesson,* 78 Misc.2d 217, 356 N.Y.S.2d 483, 484 (1974).

Of course the Court noted that the Bankruptcy Code dramatically altered the definition of "claim," but the *Kelly* dicta could be interpreted to imply that the current Code definition of "claim" must be interpreted in light of the history under the Act, suggesting that such prior history would exclude criminal restitution obligations from the discharge, and perhaps even except restitution from the definition of "claim":

> We recognize, as the Court of Appeals emphasized, that the Code's definition of "debt" is broadly drafted, and that the legislative history, as well as the Code's various priority and dischargeability provisions, supports a broad reading of the definition. But nothing in the legislative history of these sections compels the conclusion that Congress intended to change the state of the law with respect to criminal judgments.

*Id.* at 361, n. 12.

Ultimately, however, the *Kelly* Court did not conclude that criminal restitution was excluded from the Code's definition of "claim," but rather only that restitution was excluded from discharge pursuant to 11 U.S.C. § 527(a)(7):

> [W]e have serious doubts whether Congress intended to make criminal penalties "debts" within the meaning of § 101(4). But we need not address that question in this case, because we hold

---

6. The County's argument variously assumes the fee at issue was a criminal fine or restitution. As will be seen, it is not necessary to decide in this case whether it is a fee, a fine or restitution, because the result is the same. But it is worth noting that the language of the statute refers to it as a fee, and it is not included in the subsections defining restitution. All references to fees and costs, or to

other punishments allowed under this chapter of the Arizona statutes, are referred to separately and are not included in the calculation for restitution. Therefore it appears likely that the fee collected by the County Attorney's Office would not be deemed part of the restitution, even if a criminal conviction and judgment had been entered against the Debtor, which has not occurred in this case.

that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence.

*Id.* at 361.

The actual holding in *Kelly,* of course, has no application here, because the fee at issue here was not imposed "as a part of a criminal sentence," since there has been no criminal sentence, and, more importantly, the issue here is not whether the fee obligation was dischargeable, but rather whether its payment prepetition was a preference.

The Supreme Court subsequently answered the question left unanswered in *Kelly,* holding unequivocally that restitution is a "debt" within the meaning of § 101(12), and therefore a "claim" within the meaning of § 101(5), even if it arises under criminal law. *Penn. Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 557–60, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990) ("The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation, regardless of the objective the State seeks to serve in imposing the obligation."). *Accord, Wyle v. C.H. Rider & Family (In re United Energy Corp.),* 944 F.2d 589 (9th Cir.1991) (restitution rights were antecedent debts); *In re Towers,* 162 F.3d 952 (7th Cir.1998), *cert. denied Illinois ex rel. Ryan v. Towers,* 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999) (civil restitution payable to, but not for the benefit of, the state was a dischargeable debt in chapter 7); *Hardenberg v. Virginia (In re Hardenberg),* 42 F.3d 986 (6th Cir.1994) (criminal fines and costs were "debts" that were dischargeable in a chapter 13 case); *Babitzke v. Mantelli (In re Mantelli),* 149 B.R. 154, 156 (9th Cir. BAP 1993) ("Even if the debtor's payment of the $3,830.00 [pursuant to a civil contempt order] were in the nature of 'restitution,' the Supreme Court in [*Davenport*] has recognized that restitution obligation creates a 'debt' ...."); *California v. Heincy (In re Heincy),* 78 B.R. 246 (9th Cir. BAP 1987) (crim-

inal restitution obligation is a debt that may be dischargeable in chapter 13), *rev'd on other grounds,* 858 F.2d 548 (9th Cir. 1988) (dischargeability issue not ripe until chapter 13 plan payments are completed); *Zimmerman v. Itano Farms, Inc. (In re Currey),* 144 B.R. 490 (Bankr.D.Idaho 1992) (a criminal restitution obligation is a debt, and therefore prepetition payment of such debt is recoverable as a preference); *Becker v. County of Sacramento (In re Hackney),* 83 B.R. 20 (Bankr.N.D.Cal. 1988) (same).

Consequently, regardless whether the fee obligation pursuant to A.R.S. § 13–1809 is a criminal fine or a restitution obligation, it creates a "debt" and therefore a "claim" by the County. Because the County is an entity that has a claim, it is a creditor by virtue of the plain language of § 101(10), and therefore payment of that fee satisfies the first element of a preference pursuant to § 547(b)(1).

## No Policy Precludes Application of Preference Law to Criminal Fines and Fees

■ The County repeatedly emphasizes that A.R.S. § 13–1809 is a criminal statute, and that "bankruptcy laws are not a haven for criminal offenders." This argument rests on two fundamental misconceptions of bankruptcy law and preference law. These same misconceptions underlie the holding in *Becker v. County of Santa Clara (In re Nelson),* 91 B.R. 904 (N.D.Cal.1988) ("regardless of whether restitution should be analyzed as a debt, criminal restitution is excepted from avoidance under 547," not because of any statutory language, but to avoid interference with the state criminal justice system, based on extrapolations from *Kelly*). *Nelson* was decided after *Kelly* but prior to *Davenport,* and *Nelson* relied on the policy analysis contained in the *dictum* in *Kelly* that was subsequently rejected by the Supreme Court in *Davenport.* The County relies heavily on *Nelson,* even though in that case the restitution had been imposed as part of a criminal conviction, whereas

here there has been no conviction or other judgment.

 To the extent that a state criminalizes the mere failure to pay a debt, the bankruptcy laws in fact are a haven, and have been so intended for at least 250 years. One of the original purposes of the bankruptcy laws was to discharge a debtor from debtor's prison, on the condition that he disclose and make available to his creditors all of his nonexempt assets. England's Statute of 4 Anne, adopted in 1705, is generally regarded as the first discharge provision in a bankruptcy law, whose "primary purpose" "was to facilitate creditors' recoveries" by encouraging debtors to disclose their assets.[7] A similar discharge provision was contained in the Statute of 5 George, which was adopted in 1732 and was the bankruptcy law in effect in England at the time of the adoption of the American Constitution, and served as the model for America's first bankruptcy statute, the Bankruptcy Act of 1800.[8] Consequently it has always been intended that bankruptcy law override some state criminal laws. To exempt an honest debtor[9] from criminal penalties does not "turn the criminal justice proceedings on its [sic] head," as the County argues; rather, the County's apparent belief in the inherent superiority of its criminal statutes turns bankruptcy law on its head.

The preference statute provides the debtor no "haven" and does not exist for the benefit of the debtor, nor is there any inherent reason why a governmental entity should be entitled to enact criminal statutes that are exempt from the preference provisions of the Bankruptcy Code. The preference statute exists to implement two fundamental policies of the bankruptcy law: the "prime bankruptcy policy of equality of distribution among creditors," and to "reduce[ ] the incentive to rush to dismember a financially unstable debtor." *In re Smith*, 966 F.2d 1527, 1535 (7th Cir.1992). Recovery of a preference does not benefit the debtor, but merely ensures that no creditor can obtain preferential treatment over other creditors within 90 days prior to the bankruptcy filing. Simply because the State has granted counties a statutory entitlement to collect bad check processing fees as part of a criminal statute does not entitle the County to preferential treatment that other creditors do not enjoy. Nor does it entitle the County to create priorities, or exemptions from the preference statute, for certain creditors, which Ribelin Sales properly recognized here without requiring the Trustee to file an adversary proceeding.

Unlike the discharge exceptions, the preference statute does not treat criminal fines, penalties, forfeitures or restitution any differently than other debts, except as specifically set forth in § 547(c). There are eight carefully crafted exceptions to preference avoidance defined in § 547(c), and none comes close to the broad exemption for payments imposed by criminal statutes argued by the County.

The County's processing fee may be excepted from the discharge, which means that the County can attempt to collect the fee from the debtor's postpetition earnings. But what has been collected from property that should have become property of the Chapter 7 estate, or that would

7. Charles Jordan Tabb, *The Historical Evolution of the Bankruptcy Discharge*, 65 AM.BANKR. L.J. 325, 337 (Spring 1991).

8. *Id.* at 340.

9. True, the discharge has never applied to fraudulent debtors, but states are not free to define what constitutes fraud for purposes of the discharge. Consequently even if the debtor here had been convicted under A.R.S. § 13-1807, that would not conclusively determine that the fee imposed by A.R.S. § 13-1809 must be excepted from the discharge pursuant to Code § 523(a)(2) or § 523(a)(4), which have different, federally defined requirements than A.R.S. § 13-1807. This adversary proceeding does not require a determination of whether either the debt to Rebelin Sales or to the County would have been dischargeable pursuant to §§ 523(a)(2), (a)(4), or (a)(7).

have been the debtor's exempt property, must be returned to the estate to be shared pro rata among all creditors, the County included.

This Court concurs with the well reasoned, on point decision in *In re Currey, supra.*

### The Bad Check Processing Fee Was an Antecedent Debt

■ If the county's processing fee were in the nature of a commission collected on amounts actually received on account of the threatened prosecution, it might be argued that the County's claim arose and the Debtor's payment occurred simultaneously. But that is not the nature of this fee. The bad check processing fee is determined at the time the prosecution is initiated based on the face amount of the bad checks. The fee is $50, $75, or $100 on bad checks up to $100, $300 and $1,000, respectively, and 15% of the "face amount of the check if the check is greater than one thousand dollars." A.R.S. § 13–1809(E). Consequently the amount of the fee is calculated and the fee is imposed by statute without regard to whether any amount of restitution is actually paid by the defendant/debtor. Perhaps the legislature structured the fee this way because there are "expenditures associated with the investigation" incurred prior to the prosecution, for which the fee is compensation pursuant to A.R.S. § 13–1811(E).[10] It is at least clear from this scheme that the fee was incurred upon the commencement of the prosecution. Counsel for the County agreed at oral argument that the fee was incurred at least as of that time: she acknowledged that if a bankruptcy had been filed after prosecution but before the collection of any funds, the County would have a claim in the bankruptcy case for the fee incurred.

Because the fee was incurred no later than the commencement of the prosecution, and the payment on account of the prosecution must have occurred at a later time, the payment was on account of an antecedent debt.

The County has not asserted that the payment was a substantially contemporaneous exchange for new value provided by the County to the Debtor. *See In re Mantelli,* 149 B.R. 154, 158 (9th Cir. BAP 1993) ("We fail to see how the avoidance of incarceration fits within [this] definition of new value."). Nor does the County argue that the payment was made in the ordinary course of the debtor's business, for purposes of the affirmative defense of 11 U.S.C. § 547(c)(2).

### Payment of the Fee Provided the County More than It Would Have Received In Chapter 7

■ In the Ninth Circuit, it is sufficient to establish the § 547(b)(5) element of preference to demonstrate that a creditor in the transferee's position would not be paid in full by a Chapter 7 distribution. *Comm. of Creditors Holding Unsecured Claims v. Koch Oil Co. (In re Powerine Oil Co.),* 59 F.3d 969, 972 (9th Cir.1995), *cert. denied,* 516 U.S. 1140, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996). Here it is undisputed that unsecured creditors will not be paid in full from this estate, and the County has not argued that its fee would be entitled to any priority over general unsecured claims, such as a tax of the type identified in 11 U.S.C. § 507(a)(8).

The County has argued that if its fee had not been paid it would have a nondischargeable claim in this bankruptcy. That the County might receive payment in full from the Debtor's postpetition income, or from any source other than property of the estate, does not prevent satisfaction of

---

10. A.R.S. § 13–1811(B) provides that the "county attorney shall transmit to the county treasurer for deposit in the bad check trust fund any fees that are collected pursuant to [A.R.S.] §§ 13–1809 and 13–1810." A.R.S. § 13–1811(E) provides that the "monies in

the fund shall be used only for the expenditures associated with the investigation, prosecution and deferred prosecution of offenses pursuant to [A.R.S. § 13–1807 and other statutes]."

§ 547(b)(5). This argument was rejected by the Ninth Circuit Bankruptcy Appellate Panel, in *Mantelli, supra:* "The relevant inquiry is not whether [the creditor] could receive more by being able to compel collection against the debtor on a nondischargeable debt. Rather, it is whether [the creditor] would receive more under the distributive provisions of the Code than she would receive absent any transfer." 149 B.R. at 157. Even a guaranteed ability to recover from a bank-issued letter of credit is insufficient to defeat the satisfaction of this element of preference. *Powerine, supra.* The nondischargeability of the County's claim, if it is nondischargeable, only means that its claim is reinstated against the Debtor upon its repayment of the avoided preference. *In re Hackney,* 93 B.R. 213 (Bankr.N.D.Cal.1988).

The Court finds and concludes on undisputed facts that Maricopa County received a preferential transfer that is avoidable under 11 U.S.C. § 547.[11] Maricopa County received a payment of $1,144.19 within ninety days of the bankruptcy, paid on account of an antecedent debt, for the benefit of Maricopa County when the Debtor was insolvent, which enabled Maricopa County to receive more than it would have under a Chapter 7 case if the transfer had not been made. The Trustee is entitled to summary judgment.

 The Trustee also seeks attorneys' fees. The Bankruptcy Code does not create any general right to attorneys' fees, so attorneys' fees may be awarded to the prevailing party in a bankruptcy proceeding only to the extent state law governs the substantive issues and provides for attorneys' fees. *Ford v. Baroff (In re*

*Baroff),* 105 F.3d 439, 441 (9th Cir.1997); *accord, Renfrow v. Draper,* 232 F.3d 688 (9th Cir.2000). Because the substantive issue here was governed solely by the federal law of preference, the Trustee is not entitled to an award of attorneys' fees.

 The Trustee is entitled to an award of costs pursuant to Bankruptcy Rule 7054(b). *See Renfrow, supra.*

The Trustee is entitled to a judgment, pursuant to 11 U.S.C. § 550, for the amount of the preferential payment that is avoided, plus interest pursuant to 28 U.S.C. § 1961, at the rate applicable as of the date of the Trustee's lodging of the form of judgment, accruing from the date of the filing of this adversary proceeding until paid. *See Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 34 F.3d 800, 818 (9th Cir.1994).

The Chapter 7 Trustee shall lodge an order consistent with this opinion, which shall be the final appealable order in this matter.

---

11. The Court again notes that Ribelin Sales, the creditor who received the $8,855.81 from the Maricopa County Attorney's Office, has returned to the Chapter 7 Trustee the portion of the preferential transfer that it actually received. The structure of the transaction in this case, where the County collected the full amount of the $10,000.00 and then disbursed $8,855.81 to Ribelin Sales, arguably might have caused the County to have been liable for the full amount of the avoided transfer pursuant to 11 U.S.C. § 550(a), regardless of what it did with a portion of those funds. Fortunately the facts of this case do not require the Court to find whether the County could have been held liable for the full $10,000.00 it received, apparently all of which was payment on account of antecedent debt(s), because § 550(d) permits only a single satisfaction.